IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re Gillian Tracy Stupples                                  Case: 24-14367-AMC

                                                                                 Adv Pro Docket: 25-103

                                                                                 Chapter 7

Wellspointe Group, LLC
Plaintiff
       v.
Gillian Tracy Stupples
Defendant

**MOTION FOR SANCTIONS FOR THE
FAILURE OF THE DEFENDANT TO COMPLY WITH AN ORDER**

COMES NOW Wellspointe Group, LLC, Creditor ("Plaintiff"), and moves this Court for an order sanctioning Defendant Gillian Tracy Stupples for her failure to comply with this Court's Order dated July 28, 20925. Plaintiff is requesting the entry of the sanction of the entry of a judgment, an award of attorney fees and other such relief as is appropriate under the circumstances. In support of this motion (the "Motion"), your Movant would respectfully show the Court as follows:

1. The Defendant continues to willfully and deliberately obstruct discovery in this matter, acting in bad faith to conceal information and evade her obligations under both the Rules and this Court's Order. Such conduct is not merely negligent—it is contumacious, reflecting a calculated and persistent disregard for this Court's authority and the Rules of this Court. The Defendant's actions constitute a blatant violation of this Court's directive, undermine the integrity of the judicial process, and inflict severe prejudice upon the Plaintiff. Moreover, this misconduct mirrors her prior behavior in state court, where she was repeatedly sanctioned for defying

discovery orders, yet remained unmoved by monetary sanctions. This persistent pattern of disobedience demonstrates that only the most severe sanction—judgment—is adequate to address her willful defiance and protect the judicial process.

2. By way of background:

   a. The Defendant filed her bankruptcy case under Chapter 7 on December 6, 2024, submitting only a bare petition, social security statement, and matrix to commence the case. She did not file the required schedules and statements until on or about December 20, 2024. Although directed by the Chapter 7 Trustee amend her Schedules including the Statement of Financial Affairs, and the Means Test, the Defendant did not fully comply with that directive. The Statement of Financial Affairs was amended months later and only after intervention by the United States Trustee (Do , and the Defendant never amended the Means Test. The Defendant has willfully failed to amend Schedule A/B, even after admitting during the Creditors' Meeting that she omitted key assets from the schedule she filed, thereby continuing to conceal material information from this Court and her creditors.

   b. On January 9, 2025, the Plaintiff initiated this Adversary Proceeding seeking denial of discharge under Section 727 of the Bankruptcy Code. The Summons and Complaint were served on January 15, 2025, and the Defendant subsequently filed an Answer.

   c. Within days of being served with the Summons and Complaint—which identified by name the horses and items for sale featured on her business Facebook page—the Defendant removed the page along with its

      accompanying photographs, thereby eliminating material that may constitute relevant evidence.

   d. On February 24, 2025, Plaintiff served its Request for Production of Documents (Doc. 13) on the Defendant.

   e. On the same date, Plaintiff also served its Request for Admissions with Interrogatories (Doc. 15) to narrow the issues in dispute.

   f. Except for certain social media posts and photographs—which the Defendant admitted to destroying after being served with the Adversary Complaint—the Defendant did not deny possession of the requested documents or assert that such documents did not exist. Instead, she sought to evade compliance by claiming, without explanation, that producing the documents would be "unduly burdensome." Doc. 21.

   g. For records not currently in her possession, the Defendant claimed that she "may obtain such records directly from" third parties, such as "insurance providers, if necessary." *Id.*

3. By Order dated July 28, 2025, the Court denied the Defendant's application for a protective order and granted the Plaintiff's motion to compel, directing the Defendant to cooperate fully with discovery as follows:

      a. Defendant Gillian Stupples shall provide responsive answers to the Interrogatories accompanying Plaintiff's Request for Admissions within 21 days of July 28, 2025, and,

      b. Defendant Gillian Stupples shall provide the documents requested in the Plaintiff's Document Request that was the subject of the

3

       Motion to Compel Production within 21 days of the date of this Order. With respect to the cell phone records requested the Plaintiff, the Debtor shall provide a log of the names and telephone numbers and the dates of business calls made and received for the time-period specified in the request.

4. On July 24, 2025, the Defendant emailed Plaintiff's counsel acknowledging the Court's Order compelling discovery. In that email, she claimed to be "under significant financial and personal strain," with "limited resources," and stated she would provide the requested discovery only "if and when" she was able to "retrieve or reconstruct" the documents. She further asserted that, while she could produce documents currently in her possession, producing the remainder would be "difficult" due to her "housing situation, lack of consistent internet access, and limited resources." These excuses underscore her continued defiance of the Court's Order and her intent to delay and obstruct discovery rather than comply. Ex. A.

    a. Although the Defendant claims to be under "significant financial… strain" and to have "limited resources," she now resides and operates her business at a horse farm in Chesapeake, Maryland—an expansive 94-acre property with rolling fields and numerous block and brick barns containing a total of 67 stalls. This lavish property is entirely inconsistent with her assertions of financial hardship. See Doc. 69, ¶¶ 1, 14. Indeed, the Defendant claims she does not even have a lease for this estate, which serves as both her residence and business location. See also https://www.pattersonpriceland.com/listings-1/3695-augustine-herman-hwy-chesapeake-city-md-21915; and

    https://www.homes.com/property/3695-augustine-herman-hwy-chesapeake-city-md/xs8rwkl2r4knl/.)).[1]

5. The Defendant willfully disobeyed this Court's Order by failing to provide responsive answers to the Interrogatories accompanying Plaintiff's Request for Admissions, thereby demonstrating her continued defiance of her discovery obligations and open disregard for the Court's authority.

6. The Defendant likewise failed to produce the documents this Court expressly ordered her to provide. Instead, she attempted to excuse her noncompliance by claiming she had "requested" records from third parties such as utilities, banks, insurance companies, or the Internal Revenue Service but had not yet received them. This explanation is wholly inadequate—and in many instances demonstrably false—because the requested documents are readily, and in some cases immediately, available from these third parties. The Defendant's pattern of evasion and delay underscores her blatant disregard of both her discovery obligations and this Court's Order. Moreover, with limited exception, she never asserted that the requested documents were not in her possession or did not exist; she simply objected that production would be "unduly burdensome." Doc. 21.

7. In Request No. 1, the Plaintiff sought production of:

> *All receipts and documents associated with the acquisition or sale or transfer of any motor vehicle for the period beginning four years prior to the time of the commencement of the Debtor's bankruptcy case including but not limited to Bills of Sale, state registration documentation, and or Certificates of Title for motor vehicles*

---

[1] In response to interrogatories served after the recent Court hearing, the Defendant disclosed her new address. An internet search of that address revealed the substantial quality and nature of her current residence and business premises. This directly undermines her claims of financial hardship and limited resources.

Instruction D of the document request (hereafter "Instruction D") provides:

> If a requested document was but is no longer in your possession or subject to your control, or is no longer in existence, state whether the document is: missing or lost; destroyed; transferred to others; or otherwise disposed of.
>
> State the circumstances surrounding, and any authorization for, the latter three dispositions. Also, state the date or best approximate date of any such disposition and, if known, the author, subject matter, location and custodian of any such document.

The Defendant failed to produce any documents responsive to this Request, merely stating: "I do not have any documents in my possession" (Doc. 69, ¶ 1), and offering no explanation for the missing records as directed by Instruction D.

8. The Defendant failed to provide any documents responsive to Request No. 2 of the Plaintiff's Request for Production of Documents which requests:

   > *All documents for the period beginning **four years** prior to the time of the commencement of the Debtor's bankruptcy case evidencing the value of any vehicle, owned, possessed and or transferred by the debtor including any photos of vehicles.*

   The Defendant responded saying "**I do not currently own a vehicle** and have no valuation documents or photos in My possession. No responsive documents exist." Doc. 69-1, ¶2.

   Emphasis provided.

9. The Defendant produced only a handful of documents for the four-year period at issue in response to Request No. 3 of the Plaintiff's Request for Production of Documents—an obviously inadequate production given the scope of the request, which sought:

6

> *All receipts and documents associated with the acquisition, sale, transfer, or receipt of any asset with a value greater than $50 for the period beginning four years prior to the commencement of the Debtor's bankruptcy case, including, but not limited to, bills of sale, titles, and/or photographs."*

Rather than complying, the Defendant asserted that "[a]ny other transaction over that amount is reflected in the bank statements previously produced (May 2024–present)." This response blatantly disregards the four-year period specified in the Request and improperly attempts to substitute a narrow set of bank statements—covering only a few months of activity—for the documents specified. Moreover, those bank statements lack descriptions, invoices, or supporting evidence of the underlying transactions, and therefore cannot satisfy the Request.

10. The Defendant produced only three documents in response to Request No. 4 of the Plaintiff's Request for Production of Documents, which sought:

> *"All receipts and documents associated with the acquisition or sale, transfer, and/or receipt of any horse or livestock during the period beginning four years prior to the commencement of the Debtor's bankruptcy case, including but not limited to bills of sale, titles, and/or photographs."*

The Defendant's production is woefully inadequate.[2] Her own amended Statement of Financial Affairs acknowledges a judgment entered in *Kimberly Portanova-Feibus v. Gillian Stupples / GTS Show Jumping*, Docket No. MJ-45301-CV-0000043-2024, before the Magisterial District Justice, arising directly from the sale and transfer of a horse. Yet, despite this clear admission, the Defendant has produced no documents whatsoever relating to that transaction. This omission is not accidental but a blatant

---

[2] In a separate motion, received by Plaintiff's counsel and not yet filed with the court, the Defendant provided several statements from third parties claiming to be the owner of horses that they currently board at the Defendant's horse farm and facility. No statements appear to relate to the time specified in the Request.

7

and deliberate failure to comply with her discovery obligations and this Court's Order.

11. In Request No. 6 of the Plaintiff's Request for Production of Documents, the Plaintiff sought the Defendant's federal and state tax returns, including supporting schedules and attachments, for the four years preceding the filing of her Chapter 7 case—tax years ending December 31, 2021; December 31, 2022; December 31, 2023; and December 31, 2024. The Defendant produced only two of those years, and even those were patently false:

   a. For 2023, the Defendant produced a return prepared by H&R Block reporting nothing but her name, address, social security number, and filing status, showing zero income—no passive income, no business income, no wage income, and no expenses. This filing is clearly false and irreconcilable with her Amended Statement of Financial Affairs, where she admitted to $131,045.20 in gross income for that year. (Ex. B, Plaintiff has redacted Defendant's social security number).

   b. For 2022, the Defendant produced a self-prepared return consisting only of her identification, address, social security number, and filing status, again reporting zero income or expenses of any kind. This tax return is irreconcilable with her Amended Statement of Financial Affairs, which clearly acknowledges $142,503.40 in gross income for 2022. (Ex. B). A taxpayer engaged in a trade or business is required to report gross business income under IRC § 61(a)(2), with further detail and computation provided in Treas.

Reg. § 1.61-3(a), and to maintain supporting records under § 6001 and Treas. Reg. § 1.6001-1.

c. The Defendant further claimed she was "requesting transcripts as no copies are in my possession, and will supplement if received," yet she has failed to produce her 2021 or 2024 returns. This explanation is knowingly false, as tax transcripts are immediately available to any taxpayer through the IRS online portal.

d. The Defendant's submission of what appears to be false and fabricated tax returns, coupled with her refusal to obtain readily accessible IRS transcripts, constitutes not only willful disobedience of this Court's Order but also possibly perjury and deliberate obstruction of the judicial process. Such misconduct underscores the Defendant's bad faith and provides overwhelming justification for the imposition of the harshest sanctions, including default judgment

12. In Plaintiff's Request No. 8 the Plaintiff sought production of

*All monthly bank statements and check register, canceled checks, and deposit slips for the period beginning four years prior to the time of the commencement of the Debtor's bankruptcy case for any accounts held by you and or in which you had an interest.*
.
The Defendant produced only nine bank statements—covering April 2024 through December 2024—in response to this request,[3] while failing to produce any bank statements for the period from December 2020 through March 2024. She also failed to provide any check registers or deposit slips, asserting that she does not maintain such records. Although the Defendant claimed she was "requesting archival

---

[3] Defendant also provided bank statements for several months in 2025 that were not responsive to the Document Request.

9

statements from the bank and will supplement if obtained," she offered no proof that any such request was made, nor did she provide evidence of payment necessary to retrieve the bank's records.

13. Plaintiff's Request No. 9 sought:

    *All automobile insurance policies, declaration pages and records for the period beginning four years prior to the time of the commencement of the Debtor's bankruptcy.*

    The Defendant provided no automobile insurance policies or declaration pages for the four-year period requested. She provided one declaration page for a truck Defendant states she did not own. In addition, the Defendant provided an insurance company acknowledgment of a claim for a 2006 Mini Cooper S – a vehicle for which she failed to provide any documentation per Request No. 1.

14. Plaintiff's Request No. 12 sought:

    *All business records for the period beginning four years prior to the time of the commencement of the Debtor's bankruptcy including, but not limited to, all business ledgers, journals, and accounting records, billing documents, receipt journal, expense journal, invoices from vendors, cash receipts and/or records of business income, expenses, and profit/loss statements for the past four years.*

    The Defendant failed to produce these records stating:

    I do not keep formal ledgers. My bank statements serve as my record of income/expenses. Previously produced the profit and loss statement prepared for the Trustee; business has not broken even. No additional formal records exist

    Doc. 69-1 ¶12.

    In her March 19, 2025, Response to Plaintiff's Document Request (Doc. 21), the Defendant objected on the sole ground that production of the requested documents would be "unduly burdensome," without asserting that the documents were

10

unavailable or did not exist. The Defendant thereafter produced only a limited subset of bank statements, which fail to identify the nature of deposits and disbursements, claiming that she does not maintain a check register, thereby precluding meaningful analysis or interpretation.

"The Defendant's failure to maintain business records is contrary to her obligation under 26 C.F.R. § 1.6001-1 – which requires taxpayers to keep permanent books and records sufficient to establish the amount of gross income, deductions, and credits. Moreover, As used in § 727(a)(3), the terms 'keep' and 'preserve' impose different duties on a Chapter 7 debtor. To 'keep' a record means that the debtor is recording business information in a generally contemporaneous, comprehensible, and reasonable manner to facilitate a determination of the business's financial status and the preparation of required reports and tax returns. In other words, the debtor has an affirmative duty to 'to create books and records accurately documenting his business affairs.'" United States Tr. v. Fhuere (In re Fhuere), 667 B.R. 904, 918 (Bankr. D. Utah 2025)

15. Plaintiff's Request No. 14 sought:

*All contracts, agreements, and leases related to your businesses and residences for the past four years.*

> The Defendant responded "[p]reviously produced lease for 688/699 Tocco Rd in Montrose (July 2025) and the lease for 557 Street Rd in Cochranville (July 2022 – June 2025). My current location in Chesapeake City MD has no written lease. I have no other contracts/agreements responsive." Doc. 69-1, ¶14.

Although the Defendant now claims in her most recent Response to Plaintiff's Document Request that she does not possess "other contracts/agreements responsive," this assertion is irreconcilable with her prior Response to Plaintiff's Request for

11

Production of Documents (Doc. 21, filed March 19, 2025). In that earlier filing, the Defendant expressly acknowledged possession of such documents and represented that she was "willing to produce contracts, agreements, or leases that are directly relevant" to Plaintiff's claims, while attempting to justify withholding others on the ground that they "may contain confidential terms, personal information, or third-party data requiring redactions or a protective order before disclosure." The Defendant's contradictory statements cannot be explained as mere oversight; rather, they reflect a deliberate misrepresentation designed to conceal relevant evidence, obstruct the discovery process and evade compliance with this Court's Order.

16. In Request No. 15 of the Plaintiff's Request for Production of Documents, the Plaintiff sought the Defendant's telephone and/or cell phone records for the past four years. In its July 28, 2025, Order (Doc. 67), the Court directed the Defendant to provide a log identifying the names and telephone numbers, together with the dates of all business calls made and received during the specified period. The Defendant produced only information from April 2024 through December 2024[4] limited portion of the four-year period covered by the Plaintiff's request, and even then, supplied nothing more than incomplete cell phone screenshots that listed dates and numbers and only a few names of the parties to the calls in a series of emails[5] for dates that appear to be not earlier than the third quarter of 2024. This deficient production falls far short of what the Court mandated, reflecting a deliberate disregard of her

---

[4] The Defendant also submitted cell phone screenshots reflecting calls that occurred after the timeframe specified in the Document Request and identified a few of the names associated with the telephone numbers.

[5] Instead of a coherent log, the Defendant provided numerous emails (some duplicates) with screen shots from a cell phone with notations setting out "business" calls.

12

discovery obligations, and demonstrating a continuing effort to obstruct and frustrate the discovery process.

The Defendant explained her failure to comply with the Court order, stating "I have requested older records from AT&T and will supplement if provided." This explanation is not credible as the AT&T websites states that immediate online access to call history on an "AT&T Phone Call Logs page" from the "My Digital Phone Menu" is available wherein the phone call history may be sorted by name, number or length of call. See, https://www.att.com/support/smallbusiness/article/smb-local-long-distance/KM1194880/ See also, https://www.att.com/support/article/u-verse-voice/KM1001418/

17. In Request No. 17 of the Plaintiff's Request for Production of Documents, the Plaintiff sought:

*All photographs and records posted in any social media account for the Debtor or her businesses for the past four years.*

   a. Although the Plaintiff was able to review portions of the Defendant's public Facebook account prior to commencing the Adversary Proceeding, that account was deliberately removed immediately after service of the complaint, a calculated act evidencing an attempt to conceal or destroy relevant evidence.

   b. The Defendant has admitted to this destruction but has likewise failed to produce the contents of her Instagram account, which she concedes contains documents posted prior to the commencement of the bankruptcy case. Instead, she dismissively claimed: *"I have a private Instagram and have not posted any business content since the bankruptcy commencement."* Doc. 69, par 17. This self-serving assertion does not excuse her obligation to preserve and

      produce responsive social media records, and her conduct demonstrates a continuing pattern of spoliation and obstruction.

18. The record before this Court leaves no doubt that the Defendant has willfully and repeatedly defied her discovery obligations and this Court's July 28, 2025, Order.

19. Despite explicit direction to provide responsive interrogatory answers and document production within twenty-one days, the Defendant has produced only a fraction of what was ordered, and even then, in incomplete and misleading form. Her production has been selective, evasive, and in some instances demonstrably false.

20. The Defendant failed to contact Plaintiff's counsel to seek a stipulation for an extension of time. Instead, she ignored her obligation and made no effort whatsoever to secure additional time to produce the document expressly ordered by the Court.

21. The Defendant has engaged in spoliation of social media evidence, offered implausible excuses for withholding easily obtainable records, and misrepresented her possession of contracts and agreements previously acknowledged.

22. Such conduct is not mere negligence or oversight; it is deliberate, bad-faith obstruction designed to conceal material evidence, frustrate discovery, and prejudice the Plaintiff.

23. The Defendant's pattern of disobedience is part of a broader course of conduct in which she has repeatedly defied judicial authority, both in this matter and in prior proceedings.

24. The Defendant made no effort to contact Plaintiff's counsel to request cooperation in seeking an extension of the Court's 21-day deadline for producing responsive documents. Instead, she diverted her efforts into drafting and mailing (postmarked

August 13, 2025) lengthy, dilatory motions—served on Plaintiff's counsel but not yet filed with the Court—seeking to "exclude evidence regarding horse ownership" and to "exclude evidence, for disclosure, to quash subpoena and for protective order." These filings[6] are not good faith attempts at compliance but transparent tactics of delay and obstruction. This conduct, when considered alongside her repeated discovery abuses, makes plain that the Defendant has acted in contempt of this Court's July 28, 2025, Order, and it underscores the necessity of imposing the ultimate sanction of default judgment, together with an award of attorney's fees and costs.

25. The Defendant failed to specify or explain—and failed to provide any written evidence of—the steps she allegedly took to obtain information and documents to which she had access but claimed not to possess.

26. It is evident that the Defendant is once again employing the same obstructionist "rope-a-dope" tactics in this matter that she previously used in the Chester County litigation between the parties—a strategy that ultimately failed and resulted in a judgment exceeding $100,000 being entered against her after trial. n the prior state court litigation,[7] the Defendant's persistent refusal to cooperate with discovery compelled the Court to grant the Plaintiff's repeated motions to compel. When the Defendant still failed to comply, the Court imposed monetary sanctions against her for contempt. Yet even those sanctions failed to secure compliance, as the Defendant neither produced the required documents nor paid[8] the sanctions ordered. This history

---

[6] Similar to the Defendant's Renewed Motion for a Protective Order. Doc. 56.
[7] *Wellspointe Group, LLC v. Gillian Stupples*, docket 2022-08063-CT (Chester).
[8] The Defendant failed to include those monetary sanctions as a debt in Schedule E/F.

demonstrates a consistent pattern of defiance and bad faith that mirrors her conduct in the present case.

27. Accordingly, Plaintiff respectfully submits that the Defendant cannot be compelled or coerced into compliance with this Court's Order. Her willful disobedience of the Court's July 28, 2025, Order demonstrates open contempt for the authority of this Court. The only appropriate remedy is to hold the Defendant in contempt and impose sanctions commensurate with the gravity of her misconduct, including the entry of judgment, together with an award of attorney's fees and costs. Anything less will only reward her defiance and further prejudice the Plaintiff.

WHEREFORE Plaintiff requests that the Court enter judgment against the Defendant, dismissing her bankruptcy case, designating all her debts to be non-dischargeable, together with an award of attorney's fees and costs, and such further relief as the Court deems just and proper. Only the entry of such relief will remedy the prejudice suffered by Plaintiff, uphold the integrity of the judicial process, and deter the Defendant from continuing her blatant disregard for this Court's authority.

Respectfully submitted:

/s/ Richard N Lipow

By_____
RICHARD N. LIPOW, ESQUIRE
Attorney at Law
43 Stonehedge Drive
Glenmoore PA 19343
(610) 251-2500

Attorney for Plaintiff

Certification of Service

The undersigned certifies to the Court that he served a true and correct copy of the foregoing and all other documents contemporaneously filed on defendant electronically at the time it was filed and by first class mail.

Respectfully submitted:

/S/ RICHARD N LIPOW

By_____
RICHARD N. LIPOW, ESQUIRE
ATTORNEY AT LAW
Attorney for Plaintiff