**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **IN RE** | : | **Chapter 7** |
| | : | |
| **GILLIAN TRACY STUPPLES,** | : | |
| | : | **Bankruptcy No. 24-14367-AMC** |
| Debtor, | : | |
| _____ | : | |
| | : | |
| **WELLSPOINTE GROUP, LLC,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Adv. Proc. No. 25-00103-AMC** |
| V. | : | |
| | : | |
| **GILLIAN TRACY STUPPLES,** | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**OPINION**

## I.    INTRODUCTION

This adversary proceeding concerns an objection to the discharge of Debtor Gillian Tracy Stupples ("Defendant") by creditor Wellspointe Group, LLC ("Plaintiff," together with Defendant, the "Parties") pursuant to 11 U.S.C. § 727(a)(4)(A). *See* Case No. 25-103, ECF No. ("ECF") 1. Plaintiff moves pursuant to Federal Rule of Civil Procedure ("FRCP") 37(b)(2)(A), incorporated by Federal Rule of Bankruptcy Procedure 7037, for sanctions against Defendant in the form of a default judgment based upon Defendant's alleged violations of this Court's Order compelling her to comply with certain discovery obligations. *See* Case No. 25-103, ECF 70; ECF 84.

1

Due to Defendant's egregious discovery misconduct, described below, the Court will grant Plaintiff's request for sanctions in the form of a default judgment. Accordingly, Defendant's discharge will be denied pursuant to § 727(a)(4)(A) of the Bankruptcy Code.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2022, Plaintiff sued Defendant in the Court of Common Pleas of Chester County (the "State Court") for unpaid lease payments.[1] Case No. 25-103, ECF 1, ¶ 8; Case No. 24-14367, ECF 26, 3. The State Court awarded Plaintiff a judgment in its favor and against Defendant in the amount of $110,000 (the "Wellspointe State Court Judgment").[2] Case No. 25-103, ECF 1, ¶ 8.

On December 5, 2024, the Sheriff of Chester County executed the Wellspointe State Court Judgment by levying upon Defendant's personal property (the "Levy") located at 557 Street Road, Cochranville, Pennsylvania 19330 (the "Cochranville Property"). *See id.*; *see also* ECF 36, Ex. B; ECF 37, ¶ 16.

On December 6, 2024 (the "Petition Date"), with the assistance of counsel, Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Case"). *See* Case No. 24-14367, ECF 1.

On January 9, 2025, Plaintiff initiated this adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint") in which Plaintiff seeks denial of Defendant's discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code on grounds that Defendant knowingly and fraudulently made false oaths or accounts in connection with the

---

[1] The Parties identify this matter as *Wellspointe Group, LLC vs. GTS Show Jumping, Gillian Stupples,* No. 2022-08063-CT. *See* Case No. 25-103, ECF 1, ¶ 8; Case No. 24-14367, ECF 26, 3.
[2] Neither Parties' filings indicate the exact date that *Wellspointe Group, LLC vs. GTS Show Jumping, Gillian Stupples* was initiated or the date the Wellspointe State Court Judgment was awarded.

Bankruptcy Case. Case No. 25-103, ECF 1; *see* 11 U.S.C. § 727(a)(4)(A).[3] As discussed in more detail below, the Complaint alleges that Defendant made misrepresentations and omissions in the Petition, bankruptcy schedules (the "Schedules"), and Statement of Financial Affairs ("SOFA"). *See* Case No. 25-103, ECF 1. The Complaint argues that these alleged misrepresentations and omissions are consistent with a pattern of deliberate dishonesty and fraud rather than innocent mistake. *Id.* at ¶¶ 44 & 50-51.

On February 18, 2025, Defendant, acting pro se, filed an Answer to the Complaint (the "Answer"). Case No. 25-103, ECF 6.

On February 20, 2025, Defendant filed an Amended Schedule E/F and an Amendment to the Matrix List of Creditors. Case No. 24-14367, ECF 17-18.[4]

On February 25, 2025, Plaintiff served a Request for Production of Documents (the "Request for Production") on Defendant. *See* Case No. 25-103, ECF 13. The Request for Production sought:

1. All receipts and documents associated with the acquisition or sale or transfer of any motor vehicle for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy case including but not limited to Bills of Sale, state registration documentation, and or [sic] Certificates of Title for motor vehicles.
2. All documents for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy case evidencing the value of any vehicle, owned, possessed and or [sic] transferred by the debtor including any photos of vehicles.
3. All receipts and documents associated with the acquisition or sale, transfer and or [sic] receipt of any asset with value greater than $50 for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy case including by [sic] not limited to bills of sale, title, and or [sic] photographs.

---

[3] The Complaint sets forth only one count, in which Plaintiff seeks denial of discharge pursuant to § 727(a)(4)(A) on the basis that Defendant made false oaths in connection with the Bankruptcy Case. *See* Case No. 25-103, ECF 1, ¶ 13. However, Plaintiff also alleges in the First Motion for Sanctions that Defendant destroyed evidence after being served with the Complaint by deleting social media content that advertised her services and horses for sale. Case No. 25-103, ECF 70, 2-3. Based on principles of fair notice, the Court will only consider the allegations made in connection with the § 727(a)(4)(A) count.

[4] Defendant's amendments are described in detail below in the discussion of the meritoriousness of the Parties' claims and defenses.

4.  All receipts and documents associated with the acquisition or sale, transfer and or [sic] receipt of any horse or livestock during the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy case including by [sic] not limited to bills of sale, title, and or [sic] photographs.

5.  All credit card statements and receipts for the past four years.

6.  All federal and state tax returns, including supporting schedules and attachments, for the past four years.

7.  All correspondence with the Internal Revenue Service and state tax authorities for the past four years.

8.  All monthly bank statements and check register [sic], canceled checks, and deposit slips for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy case for any accounts held by [Defendant] and or [sic] in which [Defendant] had an interest.

9.  All automobile insurance policies, declaration pages[,] and records for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy.

10. All business insurance policies, declaration pages[,] and records for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy.

11. All homeowners' or renter insurance policies, declaration pages[,] and records for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy.

12. All business records for the period beginning four years prior to the time of the commencement of the [Defendant's] bankruptcy including, but not limited to, all business ledgers, journals, and accounting records, billing documents, receipt journal[s], expense journal[s], invoices from vendors, cash receipts and/or evidence of deposits, records of business income, expenses, and profit/loss statements for the past four years.

13. All financial statements, including balance sheets, income statements, and cash flow statements, for the past four years.

14. All contracts, agreements, and leases related to [Defendant's] businesses and residences for the past four years.

15. All telephone and or [sic] cell phone records for the past four years.

16. All records related to an injury claim set out in [Defendant's] bankruptcy schedules and statements.

17. All photographs and records posted in any social media account for the [Defendant] or her businesses for the past four years.

*Id.*

On March 4, 2025, Plaintiff served a Request for Admissions on Defendant (the "Request for Admissions"). Case No. 25-103, ECF 15-16.

On March 10, 2025, the Chapter 7 Trustee filed a Report of No Distribution. *See* Case No. 24-14367.

On March 24, 2025, Defendant filed a Motion for Protective Order (the "First Motion for Protection"), seeking to limit the scope of Plaintiff's discovery requests on grounds that each request was "overly broad, unduly burdensome, and irrelevant." *See* Case No. 25-103, ECF 18. On the same day, Defendant also filed a Response to the Request for Admissions (the "Response to Request for Admissions"), in which she offered incomplete and often ambiguous responses to the Request for Admissions. Case No. 25-103, ECF 20. Also on the same day, Defendant filed a Response to the Request for Production (the "First Response to Request for Production"), objecting in vague terms to each of Plaintiff's requests as overly broad, unduly burdensome, irrelevant, and/or containing privileged information.[5] Case No. 25-103, ECF 21.

On March 26, 2025, Plaintiff filed a Motion to Compel Production of Documents, to Deny Requests for Protective Order, and Request to Extend Discovery Time ("Motion to Compel Production"). Case No. 25-103, ECF 23. Plaintiff asserted that, at the time of filing the Motion to Compel Production, Defendant had failed to produce a single document sought in the Request for Production. *Id.* at 2.

On March 28, 2025, Plaintiff filed a Motion to Compel Complete and Responsive Answers to Interrogatories (the "Motion to Compel Responses"), arguing, *inter alia*, that Defendant's interrogatory responses were "vague, evasive[,] and incomplete." Case No. 25-103, ECF 26, ¶ 6.

On April 5, 2025, Plaintiff filed an Affidavit of Plaintiff's Counsel outlining "numerous requests" to meet and confer with Defendant prior to filing the Motion to Compel Production and

---

[5] The only exception was Defendant's response to Plaintiff's request for all credit card records from the past four years, to which Defendant responded that she "does not have any credit cards and has not held any credit cards in the past four (4) years." Case No. 25-103, ECF 21, ¶ 5.

Motion to Compel Responses, which attempts allegedly went unanswered by Plaintiff. Case No. 25-103, ECF 28, 1.

On April 7, 2025, Defendant filed an Opposition to the Motion to Compel Production. Case No. 25-103, ECF 29.

On April 8, 2025, Defendant filed an Opposition to the Motion to Compel Responses. Case No. 25-103, ECF 30.

Later on April 8, 2025, Defendant filed Amended Schedules H, I, and J. Case No. 24-14367, ECF 22-24.

On April 21, 2025, Defendant filed a Motion to Dismiss Adversary Complaint, or in the Alternative, For Judgment on the Pleadings (the "Motion to Dismiss").[6] Case No. 25-103, ECF 36.

On April 24, 2025, Plaintiff filed a Notice to Take Deposition of Defendant on May 6, 2025. Case No. 25-103, ECF 38.

On May 5, 2025, one day before the scheduled deposition, Defendant filed an Objection to Notice of Deposition and Request for Protective Order (the "Second Motion for Protection"). Case No. 25-103, ECF 42. In the Second Motion for Protection, Defendant sought to delay her deposition until after the resolution of the Motion to Compel Production, Motion to Compel Responses, First Motion for Protection, and Motion to Dismiss. *Id.* at 2.

Additionally, on May 5, 2025, Defendant filed an Amended SOFA. Case No. 24-14367, ECF 26.

---

[6] Defendant titled the Motion to Dismiss "Amended Motion to Dismiss," but the docket shows Defendant had never filed a motion to dismiss prior to filing the "Amended Motion to Dismiss." *See* Case No. 25-103, ECF 36.

On May 21, 2025, Plaintiff filed a Declaration Regarding the Meet and Confer, averring, *inter alia*, that Defendant "refused to confer about the [P]laintiff's [Request for Production], instead insisting that she would wait for the court to determine her request for a protective order." Case No. 25-103, ECF 49, ¶ 3. Plaintiff also averred that Defendant "continued to refuse to agree to provide any documents, even after the [P]laintiff's counsel offered to limit the scope of the [Request for Production] [from four years] to the past three years." *Id.* at ¶ 3.

On May 27, 2025, Defendant filed a Declaration of Gillian Tracy Stupples regarding Plaintiff's attempts to meet and confer, in which she denied Plaintiff's allegations that she refused to confer regarding the Request for Production, but at the same time admitted that she "stated that [she] had already filed a Motion for Protective Order with the Court, and [she] wished to await the Court's decision before discussing further document production." Case No. 25-103, ECF 50, ¶ 3. Defendant also admitted that she declined Plaintiff's offer to narrow the scope of the Request for Production from four years to three years, on grounds that she believed the document requests were still "overly broad, unduly burdensome, and not at all relevant[.]" *Id.* at ¶ 4.

On July 3, 2025, the Court entered an order denying Defendant's Motion to Dismiss. Case No. 25-103, ECF 54.

On July 11, 2025, Defendant filed a Renewed Pro Se Motion for Protective Order (the "Third Motion for Protection"). Case No. 25-103, ECF 56. Defendant asserted that "all of the issues raised in the [Complaint] were already addressed in [her] amended bankruptcy petition." *Id.* at ¶ 4. Defendant contended furthermore that the Request for Production should be limited because "[a]s a pro se defendant without legal counsel, [she was] unable to comply with such an extensive request and the burden [was] causing severe emotional distress." *Id.* at ¶ 6.

Later on July 11, 2025, Plaintiff filed a Response to the Third Motion for Protective

Order (the "Response to Third Motion for Protection") and accompanying memoranda, arguing

that "the documents requested by [Plaintiff were] basic records that any business, such as was

operated by the [D]efendant, would normally keep in the regular course of operations," and

furthermore, that "most, if not all, of [the requested] records should have already been used

during [Defendant's] bankruptcy proceedings to prepare her bankruptcy schedules and

statements; this raises questions about the validity of her emotional distress claim." Case No. 25-

103, ECF 57, ¶ 6; ECF 59, 3.

On July 16, 2025, Plaintiff filed an Affidavit alleging that Defendant was seeking to

"quickly sell [] horses under various aliases" without the Court's knowledge ("Plaintiff's

Affidavit Regarding Defendant's Previous Landlord"). Case No. 25-103, ECF 60.[7]

On July 21, 2025, Defendant filed a Reply to Plaintiff's Response to Third Motion for

Protection, asserting, *inter alia*, that she was a "pro se litigant with no legal training […]

currently without stable housing and [without] a confirmed mailing address due to ongoing

---

[7] In Plaintiff's Affidavit Regarding Defendant's Previous Landlord, Plaintiff averred that on July 13, 2025, Plaintiff's counsel spoke with a woman identified as Mary Alsop ("Ms. Alsop"), purportedly the owner of an equestrian facility in Montrose, PA, who claimed that she rented the facility to a "Gill Schoof," the lease term beginning on June 1, 2025. ECF 60, ¶ 2. Plaintiff alleged that Ms. Alsop reported that, before the lease took effect, "Gill Schoof" stored 27 horses, four horse trailers, and related equipment at the facility. *Id.* Ms. Alsop allegedly told Plaintiff's counsel that, after "Gill Schoof" defaulted on the rent, Ms. Alsop discovered that "Gill Schoof's" real identity was that of Defendant Gillian Stupples. *Id.* at ¶ 3. Ms. Alsop allegedly provided Plaintiff with insurance photos of the horses and equipment, some of which Plaintiff alleged matched photographs previously posted by Defendant to social media, but which had since been deleted. *Id.* at ¶ 4. Plaintiff averred, furthermore, that Ms. Alsop confirmed that "Gill Schoof's" phone number matched the number listed on Defendant's court documents in connection with the Bankruptcy Case. *Id.* at ¶ 5. Plaintiff's Affidavit Regarding Defendant's Previous Landlord includes 30 pages of pictures of horses and equipment that are allegedly owned by Defendant and that Defendant allegedly omitted from her bankruptcy filings. *See id.*

In Defendant's Declaration attached to her Reply to Plaintiff's Response to Third Motion for Protection, Defendant admitted to renting "the property from Mary *Alston*." Case No. 25-103, ECF 61-1, ¶ 6 (emphasis added). She averred, however, that she does "not own the horses referred to in the Plaintiff's affidavit […and] [t]heir presence on the property was related to [Defendant's] role as a trainer and caretaker[.]" *Id.* at ¶ 9.

financial hardship." Case No. 25-103, ECF 61, ¶¶ 2, 8. She stated also that "the pressure to produce thousands of documents [was] emotionally and logistically overwhelming." *Id.* at ¶ 9.

On July 23, 2025, the Court held a hearing at which it indicated it would grant Plaintiff's Motion to Compel Responses and Motion to Compel Production and deny Defendant's First, Second, and Third Motions for Protection. Case No. 25-103, ECF 64-66.

On July 24, 2025, Defendant sent an email to Plaintiff stating, *inter alia,* "At this time, I will begin producing documents that are currently available to me. For other documents that are not in my possession or are difficult to obtain due to my housing situation, lack of consistent internet access, and limited resources, I will provide them if and when I am able to retrieve or reconstruct them." Case No. 25-103, ECF 70-2.

On July 28, 2025, the Court entered an Order: (i) ordering Defendant to provide responsive answers to Plaintiff's interrogatories that were the subject of the Request for Admissions and the Motion to Compel Responses within 21 days of the Order; (ii) ordering Defendant to produce the documents that were the subject of the Request for Production and the Motion to Compel Production within 21 days of the order; (iii) ordering Defendant to "provide a log of the names and telephone numbers and the dates of business calls made and received for the time-period specified" in the Motion to Compel Production; and (iv) denying Defendant's First, Second, and Third Motions for Protection (the "Discovery Order"). Case No. 25-103, ECF 67.

On August 16, 2025, Plaintiff filed a copy of Defendant's Second Response to Request for Production (the "Second Response to Request for Production"). Case No. 25-103, ECF 69.

On August 19, 2025, Plaintiff filed a Motion for Sanctions against Defendant (the "First Motion for Sanctions"), arguing that Defendant "continues to willfully and deliberately obstruct

discovery in this matter, acting in bad faith to conceal information and evade her obligations under both the Rules and this Court's [Discovery] Order" by failing to provide responsive answers to interrogatories and failing to produce all of the documents required under the Discovery Order. Case No. 25-103, ECF 70, ¶ 1. Furthermore, Plaintiff avers in the First Motion for Sanctions that Defendant has sought to mislead the Court by claiming to have limited resources and to be experiencing housing instability, Plaintiff contending instead that Defendant "now resides and operates her business at a horse farm in Chesapeake, Maryland—an expansive 94-acre property with rolling fields and numerous block and brick barns containing a total of 67 stalls." *Id.* at ¶ 4.

On August 21, 2025, Defendant filed a Motion to Exclude Evidence (the "First Motion to Exclude Evidence") seeking to exclude evidence of Defendant's horse ownership that Defendant believes Plaintiff would seek to introduce at trial concerning "the transport of certain horses to Defendant's location in July 2025." Case No. 25-103, ECF 75.

On August 26, 2025, Defendant filed a Notice of Change of Address, reflecting a new mailing address of 3695 Augustine Herman Hwy, Chesapeake City, MD 21915 (the "Chesapeake City Residence"). Case No. 24-14367, ECF 27.

On August 31, 2025, Plaintiff filed a Supplemental Memorandum in Support of Motion for Sanctions.[8] Case No. 25-103, ECF 79.

On September 2, 2025, Defendant filed a Motion to Exclude Evidence, for Disclosure, to Quash Subpoena, and for Protective Order (the "Second Motion to Exclude Evidence"), seeking, *inter alia*, to exclude any evidence obtained by Plaintiff through Ms. Alsop's[9] alleged "entry into

---

[8] For clarity, only in instances where Defendant filed a response or reply to Plaintiff's memoranda—in addition to or instead of filing a response to a motion itself—does the Court note the filing of such memoranda in the Factual and Procedural Background.

[9] As noted above, Defendant avers that Ms. Alsop's name is actually Ms. Alston.

Defendant's leased barn area [...] unauthorized under Pennsylvania landlord-tenant law[;]" to exclude evidence obtained through "[p]ossible [i]mproper [s]urveillance" by Ms. Alsop; and to quash a subpoena issued to a certain "Johnson's Horse Transport" as being "the direct product of the potentially unlawful acquisition of Defendant's private conversation content." *See* Case No. 25-103, ECF 80.

Later on September 2, 2025, Defendant filed a Response to Plaintiff's Motion For Sanctions, Opposition To Plaintiff's Motion For Leave to Amend, and Response To Plaintiff's Third Discovery Request ("Response to First Motion for Sanctions"). Case No. 25-103, ECF 81. As discussed in more detail below, in the Response to First Motion for Sanctions, Defendant argues that she has produced "substantial discovery" and that the First Motion for Sanctions is "designed not merely to litigate but to overwhelm and confuse a pro se Defendant with limited resources." *Id.* at 1-2.

On September 3, 2025, Plaintiff filed another Motion for Sanctions against Defendant (the "Second Motion for Sanctions," together with the First Motion for Sanctions, the "Sanctions Motions"), again requesting the entry of sanctions in the form of default judgment against Defendant. Case No. 25-103, ECF 84. As discussed in more detail below, in the Second Motion for Sanctions, Plaintiff avers that Defendant has obstructed discovery by refusing to cooperate in scheduling her deposition. *Id.* at ¶ 7. Plaintiff also avers that Defendant continues to refuse to provide adequate responses to interrogatories, produce documents, or engage in a proper meet and confer regarding discovery deficiencies, Defendant instead insisting that any meet and confer between the Parties be conducted solely in writing. ECF 84, ¶ 14.

On September 4, 2025, Plaintiff filed an accompanying memorandum in support of the Second Motion for Sanctions. Case No. 25-103, ECF 86.

On September 8, 2025, Defendant filed several pleadings and responses, including the following:

1.  A Response to Plaintiff's Supplemental Memorandum in Support of the Motion for Sanctions (the "Response to Supplemental Memorandum"), in which Defendant argues, *inter alia*, that Plaintiff has falsely portrayed Defendant as obstructive, whereas Defendant contends that she is instead prevented from producing certain discovery due to "time, health, and financial constraints;"

2.  A Response and Supplemental Statement in Opposition to Plaintiff's Sanctions Filings ("Supplemental Response in Opposition to Sanctions"), in which Defendant argues, *inter alia*, that she has "produced materials in her possession, amended her petition in good faith to address the allegations, and requested only reasonable accommodations," and furthermore, that Plaintiff has made "excessive filings" and is delaying discovery through Plaintiff's "unilateral demands for a phone call and [in-]person deposition;"

3.  A Consolidated Reply (the "Consolidated Reply to Sanctions Motions"), in which Defendant sets forth various arguments in regard to what she calls "record accuracy[10];" requests that the court quash or limit Plaintiff's subpoena of the third-party entity Johnson's Horse Transport; requests that the Court "order Plaintiff to serve a privilege log and submit disputed materials for in camera review"; requests a protective order "restricting landlord contact and requiring Zoom depositions;" and

---

[10] For example, in the Consolidated Reply, Defendant attempts to frame a typo by Plaintiff in the spelling of Defendant's maiden name (Plaintiff wrote "Schoop" rather than "Schoof") as a "repeated misstatement [that] is misleading and risks confusing the record." Case No. 25-103, ECF 91, 2. She also argues that Plaintiff has "engaged in an onslaught of filings… often filed immediately before or after deadlines and on weekends and holidays[,] … [which] burdens Defendant, a pro se litigant, and demonstrates the need for protective conditions." *Id.*

requests that the Court order Plaintiff to "identify specific horses allegedly owned [by

Defendant] on the [P]etition [D]ate;"

4.      An Opposition to the Second Motion for Sanctions (the "Opposition to Second

Motion for Sanctions"), in which Defendant repeats her arguments that she has

complied with discovery in good faith despite alleged obstacles; and

5.      A Declaration of Gillian Tracy Stupples regarding Plaintiff's Subpoena to Johnson's

Horse Transport, arguing that Plaintiff failed to properly serve Defendant with the

subject subpoena.

*See* Case No. 25-103, ECF 88 & 90-93.

On September 11, 2025, Defendant filed a Supplemental Reply and Declaration regarding

the Second Motion to Exclude Evidence. Case No. 25-103, ECF 96.

On September 12, 2025, Defendant filed another Motion for Protective Order (the

"Fourth Motion for Protection"), asserting that she is "unable to attend any in-person deposition

due to financial hardship, lack of transportation, and ongoing medical issues resulting from a

prior car accident which affects [her] mobility." Case No. 25-103, ECF 99, 3.

On September 18, 2025, Plaintiff filed an Objection to the Fourth Motion for Protection

(the "Objection to Fourth Motion for Protection"). Case No. 25-103, ECF 100. Plaintiff argues in

the Objection to Fourth Motion for Protection that an in-person deposition is "necessary because

numerous documents will be presented during Defendant's examination" and points out that

"Defendant has consistently asserted that her only internet access is through a cell phone; this

would render a remote deposition impractical and prone to cause disruption and delay." Case No.

25-103, ECF 100, ¶ 11-12.[11]

---

[11] Plaintiff also asserts that "Defendant's obstructive tactics mirror her conduct in prior state court proceedings, where she was repeatedly sanctioned for discovery violations." Case No. 25-103, ECF 100, 26.

On September 30, Defendant filed a Reply in Support of the Fourth Motion for Protection, arguing, *inter alia*, that Plaintiff's Objection to Fourth Motion for Protection demonstrated a "pattern of harassment, intimidation, and personal attacks that substitute rhetoric for evidence." *See* Case No. 25-103, ECF 104, 1.

On October 1, 2025, a hearing was held in regard to the Sanctions Motions (the "October Hearing"). *See* Case No. 25-103, ECF 106-107.

## III.    DISCUSSION

Upon consideration of the record, it is plain that Defendant has failed to comply with the Discovery Order. Furthermore, as discussed below, Defendant's continual obstruction of discovery demonstrates that no sanction will compel her compliance with her obligations. The Court will therefore grant Plaintiff's request to impose sanctions for Defendant's failure to obey the Discovery Order in the form of a default judgment in favor of Plaintiff and against Defendant as permitted by FRCP 37(b).

### A.  Applicable Legal Principles

Where a party has failed to comply with a discovery order, FRCP 37(b) permits a court to issue sanctions including "rendering a default judgment against the disobedient party" and "treating as contempt of court the failure to obey" the order. Fed.R.Civ.P. 37(b)(2)(A)(vi)-(vii). Pursuant to FRCP 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(4). Pursuant to FRCP 37(b)(2)(C), "the court must order the disobedient party, […] to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C).

The entry of a default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice." *Companion Health Servs., Inc. v. Kurtz,* 675 F.3d 75, 84 (1st Cir. 2012) (citations omitted). A court may appropriately issue a default judgment as a sanction where a party has refused to comply with a court's order or to heed a court's warnings to participate in discovery. *See, e.g., In re Buscone*, 634 B.R. 152, 171 (B.A.P. 1st Cir. 2021), *aff'd*, 61 F.4th 10 (1st Cir. 2023) (affirming bankruptcy court's entry of default as a sanction where debtor disobeyed an order to produce discovery and failed to attend a scheduled deposition); *In re Golant*, 239 F.3d 931 (7th Cir. 2001) (affirming bankruptcy court's entering of default where, despite orders and warnings, debtor produced only 19 billing records despite having 32 clients); *In re Feldman*, 608 B.R. 426, 440 (Bankr. E.D. Pa. 2019) (imposing a default judgment in a nondischargeability proceeding against a Chapter 7 debtor where the court had "no confidence that a less severe sanction… would either motivate the [d]efendant to comply or have a deterrent effect on future such actions.").

In considering whether default judgment is an appropriate sanction for disobeying a discovery order, courts consider six factors from the decision of the Third Circuit Court of Appeals ("Third Circuit") in *Poulis v. State Farm Fire Casualty Company*, including:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984). It is not necessary to demonstrate all six factors to warrant entry of a default judgment. *In re Victor International*, 278 B.R. 67, 76 (Bankr. D.N.J. 2002), *aff'd* 97 F. App'x. 365 (3d Cir. 2004).

## B.  Non-Compliance with Discovery Order

As discussed in the following sections, Defendant has failed to comply with the

Discovery Order by (i) refusing to provide all of the documents that were the subject of the

Request for Production and the Motion to Compel Production, and (ii) failing provide responsive

answers to Plaintiff's interrogatories that were the subject of the Request for Admissions and the

Motion to Compel Responses.

### i.      Documents Pertaining to Vehicles

Despite the Court ordering Defendant to produce all receipts and documents associated

with the acquisition, sale, or transfer of any motor vehicle for the period beginning four years

prior to the Petition Date ("Request 1"), Defendant has failed to produce any such documents.

Case No. 25-103, ECF 70, 5-6. In the Second Response to Request for Production, Defendant

explains her failure by stating, "I do not have any documents in my possession." *See* Case No.

25-103, ECF 69-1, 4.[12]

Despite being ordered to produce all documents for the period beginning four years prior

to the Petition Date evidencing the value of any vehicle owned, possessed, or transferred by

Defendant ("Request 2"), Defendant provided no such documents. Case No. 25-103, ECF 70, 6.

By way of explanation, in the Second Response to Request for Production, Defendant states, "I

do not currently own a vehicle and have no valuation documents or photos in [m]y possession.

No responsive documents exist." Case No. 25-103, ECF 69-1, 4.

---

[12] Of note, Plaintiff's Request for Production instructs:

> If a requested document was but is no longer in your possession or subject to your control, or is no longer
> in existence, state whether the document is: missing or lost; destroyed; transferred to others; or otherwise
> disposed of. State the circumstances surrounding, and any authorization for, the latter three dispositions.
> Also, state the date or best approximate date of any such disposition and, if known, the author, subject
> matter, location and custodian of any such document.

Case No. 25-103, ECF 13, 2.

Furthermore, despite being ordered to produce all automobile insurance policies, declaration pages, and records for the period beginning four years prior to the Petition Date ("Request 9"), Defendant provided no automobile insurance policies or declaration pages for vehicles owned by her. Case No. 25-103, ECF 70, 10. However, Defendant did provide: (i) a declaration page for a Ford F350 she claimed was "not owned by [her]," and (ii) an insurance company acknowledgment of a claim made by Defendant for a 2006 Mini Cooper. *Id.*; *see also* Case No. 25-103, ECF 69-1, 5.

The Court finds Defendant's explanations in response to Requests 1, 2, and 9 to be insufficient. Defendant's assertion that she has no documents in her possession pertaining to vehicles acquired, sold, transferred, possessed, or owned for the four years prior to the Petition Date appears to be inconsistent with her production of an insurance company acknowledgement of a claim for a 2006 Mini Cooper. Defendant offers no explanation for or acknowledgement of this inconsistency. In addition, Defendant's purported explanation that she does not "currently" own a vehicle fails to account for her failure to produce documents related to vehicles owned, possessed, or transferred for the *four-year period* prior to the Petition Date. Together with the inconsistency described above, Defendant's responses to Requests 1, 2, and 9 give the Court reason to doubt that Defendant could not obtain any documents related to vehicles acquired, sold, transferred, possessed, or owned in the four years prior to the Petition Date.

For the above reasons, the Court finds that Defendant violated the Discovery Order by failing to produce all documents in response to Requests 1, 2, and 9.

### ii.    Documents Pertaining to Other Assets

Despite Defendant being ordered to produce all receipts and documents associated with the acquisition, sale, transfer, or receipt of any asset with a value greater than $50 for the period

beginning four years prior to the Petition Date ("Request 3"), Defendant produced "only a handful of documents." Case No. 25-103, ECF 70, 6-7. In the Second Response to Request for Production, Defendant explains that she produced three documents in relation to Request 3, including: (i) a bill of transfer for a "horse received as a favor for a friend; nominal value listed at $1;" (ii) a bill of sale for a pony for $250; and (iii) a bill of sale for a horse sold for $7,500. Case No. 25-103, ECF 69-1, 4. Apparently by way of explanation for the dearth of documents she produced, Defendant asserts that "[a]ny other transaction over that amount is reflected in the bank statements previously produced (May 2024–present)." *Id.* Defendant also represents that "[n]o separate receipts, invoices, or valuation documents are in [her] possession." *Id.* Plaintiff responds that the bank statements to which Defendant refers, as discussed below, only cover the period of April 2024 through December 2024 and, moreover, lack descriptions, invoices, or evidence regarding the nature of the underlying transactions, and therefore are not sufficiently responsive to Request 3. Case No. 25-103, ECF 70, 7.

Next, in response to being ordered produce all receipts and documents associated with the acquisition or sale, transfer, and/or receipt of any horse or livestock during the period beginning four years prior to the Petition Date ("Request 4"), Defendant's response was limited to the same three documents produced in response to Request 3. Case No. 25-103, ECF 70, 6-7. Plaintiff argues that Defendant willfully omitted production of documents related to the sale and transfer of a horse that was the subject of litigation in a Lackawanna County, Pennsylvania case *Kimberly Portanova-Feibus v. Gillian Stupples / GTS Show Jumping* (the "Kimberly Portanova-Feibus Matter").[13] *Id.*

---

[13] Plaintiff refers to the Kimberly Portanova-Feibus Matter as Docket No. MJ-45301-CV-0000043-2024. *Id.*

Defendant's response to Request 3 that "any other transaction over [$50] is reflected in the bank statements previously produced (May 2024-present)" appears to be a tacit admission that there were in fact additional transactions for assets greater than $50 during the relevant period.[14] Defendant's failure to produce receipts and documents related to those transactions, as sought in the Request for Production, is a violation of the Discovery Order. Furthermore, as a Chapter 7 debtor, Defendant has a responsibility to maintain accurate records.[15]

In regard to Request 4, in the absence of evidence on the record reflecting the basis of the Kimberly Portanova-Feibus Matter, Plaintiff has not provided sufficient support for this Court to make a finding that Defendant sold, transferred, or received any additional horses or livestock for which she did not produce documentation in discovery. Plaintiff has therefore not provided the Court with a basis to find that Defendant withheld documents in response to Request 4.

For the above reasons, the Court finds that Defendant violated the Discovery Order by failing to produce all documents in response to Request 3.

### iii.    Documents Pertaining to Taxes

Despite the Discovery Order directing Defendant to provide federal and state tax returns for the period beginning four years prior to the Petition Date ("Request 6"), Defendant produced only two of the four requested tax returns, failing to produce tax returns for 2021 and 2024. Case No. 25-103, ECF 70, 8-9. Furthermore, the two tax returns Defendant produced indicate that she earned $0.00 in income for 2022 and 2023, despite Defendant's Amended SOFA listing gross

---

[14] Furthermore, it is not at all clear to the Court why, if Defendant believed that bank statements would satisfy Request 3, Defendant would not at the very least have produced bank statements for the unaccounted-for periods for which she claims to have no documents aside from the bank statements in her possession. In any case, as noted above, such production of bank statements would not have satisfied Request 3, as she was required to produce all related receipts and documents.

[15] *See* 11 U.S.C. § 727(a)(3) ("The court shall grant the debtor a discharge, unless ... (3) the debtor has ... failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.")

income for 2022 of $142,503.40 and gross income for 2023 of $131,045.20. *Id; see also* Case No. 24-14367, ECF 26. Defendant asserts in the Second Response to Request for Production that "[for] previous years [...she] is requesting transcripts [of tax returns] as no copies are in [her] possession, and [she] will supplement if received[.]" Case No. 25-103, ECF 69-1, 4. In the Second Response to Request for Production, Defendant does not explain her failure to produce tax returns for 2024. *See id.* However, at the October Hearing, Defendant averred that she "[hasn't] filed the 2024 returns and [she] quite honestly can't tell [the Court] about the 2021 tax return." Case No. 25-103, ECF 119, 9.

As noted above, Defendant has a duty to maintain accurate financial records. *See* 11 U.S.C. § 727(a)(3). Her failure to maintain accurate records of her federal and state tax returns cannot justify failing to produce all tax returns for the subject period as required by the Discovery Order. Therefore, the Court finds that Defendant violated the Discovery Order by failing to produce all documents in response to Request 6.

### iv.    Banking Documents

Despite the Discovery Order directing Defendant to produce all monthly bank statements and check registers, canceled checks, and deposit slips for the period beginning four years prior to the Petition Date ("Request 8"), Defendant provided only nine bank statements total, covering April 2024 through December 2024. Case No. 25-103, ECF 70, 9. In the Second Response to Request for Production, Defendant represents that "earlier statements are not available to [her] online" and she is "requesting archival statements from the bank and [will] supplement if obtained." Case No. 25-103, ECF 69-1, 5. At the October Hearing, Defendant explained that she "sent a secured message twice, actually, to the [bank] stating that [she] was going to need more [statements] for a bankruptcy hearing, and [she] never got any answer back." Case No. 25-103,

ECF 119, 11. When the Court inquired as to why Defendant did not simply go online to get those prior bank statements, Defendant protested that she "provided everything that was available on the app." *Id.*

The Court finds Defendant's explanation as to her inability to obtain additional bank statements lacking in credibility. It is simply implausible, given Defendant's admitted access to a cell phone and online banking application, that Defendant is unable to access bank statements prior to April 2024. Furthermore, Defendant fails to explain why, when her messages to the bank allegedly went unanswered, she did not follow up with the bank such as by calling her local branch.

Defendant's failure to produce all bank statements for the subject period pursuant to Request 8 therefore constitutes a failure to comply with the Discovery Order.

### v.    Business Records

Despite the Discovery Order directing Defendant to produce all business records for the period beginning four years prior to the time of the Petition Date ("Request 12"), Defendant produced no such documents, while at the same time disclosing ownership of three business in her Amended Schedules and SOFA: GTS Show Jumping, Potten End LLC, and Turning Point Designs.[16] Case No. 25-103, ECF 70, 10. Defendant asserts in the Second Response to Request for Production, "I do not keep formal ledgers. My bank statements serve as my record of income/expenses. Previously produced the profit and loss statement prepared for the Trustee; business has not broken even. No additional formal records exist." Case No. 25-103, ECF 69-1, 6.

---

[16] Each of these businesses, including Defendant's omissions of information related to them in her original bankruptcy filings, are discussed in more detail below in relation to her alleged false oaths under § 727(a)(4)(A).

As noted above, Defendant has an affirmative duty to maintain records from which her financial condition and business transactions may be ascertained. *See* 11 U.S.C. § 727(a)(3). Her alleged failure to do so does not justify her non-compliance with discovery.  Furthermore, it is inconceivable to the Court that Defendant would possess *not a single document* in relation to *any* of her *three* businesses for the four years prior to the Petition Date outside of a handful of her personal bank statements beginning in April 2024 and a profit and loss statement prepared in connection with the Bankruptcy Case. The Court does not credit Defendant's representation that she lacks any additional relevant documents.

The Court therefore finds that Defendant violated the Discovery Order by failing to produce all documents in response to Request 12.

### vi.    Contracts

Despite the Discovery Order directing Defendant  to produce all contracts, agreements, and leases related to her businesses and residences for four years prior to the Petition Date ("Request 14"), Defendant produced no responsive documents, representing that she has no such records other than what she had previously produced, which she avers included a "lease for 688/699 Tocco Rd in Montrose (July 2025) and the lease for 557 Street Rd in Cochranville (July 2022 – June 2025)." Case No. 25-103, ECF 70, 11; ECF 69-1, 6. In the Second Response to Request for Production, Defendant represents that her "current location in Chesapeake City MD has no written lease" and she has "no other contracts/agreements responsive." Case No. 25-103, ECF 70, 10-11; ECF 69-1, 6.

Certain inconsistencies in the record suggest Defendant has withheld documents responsive to Request 14 in relation to a lease for the Chesapeake City Residence. First, in the Response to Plaintiff's First Motion for Sanctions, Defendant explicitly acknowledges the

existence of a lease for the Chesapeake City Residence, stating her "current lease was secured and first month's rent paid by Mr. Thinesh Sivapatham." Case No. 25-103, ECF 81, 3. This statement places into question Defendant's assertion in the Second Response to Request for Documents that the Chesapeake City Residence has "no written lease."[17] Case No. 25-103, ECF 69-1, 6. Furthermore, Defendant's reference in the Response to Plaintiff's First Motion for Sanctions to a "current lease" directly contradicts an assertion she made at the October Hearing, in which she denied that any lease exists for the Chesapeake City Residence.[18] Based on her initial representation in the Response to Plaintiff's First Motion for Sanctions that she *does* have a lease for her current residence, the Court does not credit that Defendant had no other responsive documents to Request 14.

Defendant's failure to produce all documents responsive to Request 14 therefore constitutes a violation of the Discovery Order.

### vii.    Business Call Log

Despite the Discovery Order directing Defendant to produce a log of business calls made and received for the four years prior to the Petition Date including the relevant names, telephone numbers, and dates related to such calls ("Request 15"), she produced information only from

---

[17] Defendant has made no assertions on the record that an oral lease exists.

[18] The following exchange occurred at the October Hearing:

> [Court]: Okay. So do you have like utilities or a lease agreement with [the property owner]?
>
> [Defendant]: No — no. Because it's a month-by-month rental and it's based on whatever the number of stalls, and the utilities are in [the property owner's] name.

Case No. 25-103, ECF 119, 25.

Some of Defendant's other comments at the October Hearing regarding her current living arrangements leave the Court with more questions than answers. For example, Defendant represented that "none of [her] utilities are in [her] name;" she "[does not] pay rent;" she lives in "an apartment in the barn" of an Amish property owner; her client, Mr. Sivapatham, pays all of her rent and utilities, in exchange for Defendant "tak[ing] care of his horses;" and Mr. Sivapathem additionally pays Defendant "$1200 for the daily care" of his horses. Case No. 25-103, ECF 119, 25-26.

April 2024 through December 2024. Case No. 25-103, ECF 70, 12. Furthermore, instead of

providing a log as ordered by the Court, Defendant provided a series of emails containing

"incomplete cell phone screenshots that listed dates and numbers and only a few names of the

parties to the calls." *Id.* Defendant states in her Second Response to Request for Production: "I

have requested older records from AT&T and will supplement if provided." Case No. 25-103,

ECF 69-1, 6.[19]

Defendant failed to provide a complete business call log as ordered by the Court. For that

reason, the Court finds that Defendant violated the Discovery Order by failing to produce all

documents in response to Request 15.

### viii.    Social Media

Despite the Discovery Order directing Defendant to provide all photographs and records

posted in any social media account for Defendant or her businesses for the past four years

("Request 17"), Defendant has refused to provide any responsive records. Case No. 25-103, ECF

70, 13. In the Second Response to Request for Production, Defendant explains:

> I deleted my [F]acebook page (business and personal) due to harassment and
> mental health concerns. I no longer have access to its content. I am aware that the
> plaintiff is already in possession of screenshots of certain posts from these pages.
> I have a private Instagram and have not posted any business content since the
> bankruptcy commencement.

Case No. 25-103, ECF 69-1, 7.

Request 17 asks for *all* photographs and records posted in *any* social media account for

Defendant. Nothing in Request 17's language indicates it is limited to "business content," as

Defendant suggests. Furthermore, in her Second Response to Request for Production, Defendant

---

[19] Defendant failed to provide the date of her purported request to AT&T, nor has she provided any indication of the status of her purported request.

admits to possessing an Instagram account, but nevertheless has refused to produce photographs and records responsive to Request 17.

The Court therefore finds Defendant in violation of the Discovery Order through her failure to produce documents in response to Request 17.

### ix.    Interrogatories

Plaintiff alleges that Defendant has failed to provide responsive interrogatory answers that were the subject of the Request for Admissions and the Motion to Compel Responses within the 21-day period pursuant to the Discovery Order. Case No. 25-103, ECF 70, 5; ECF 71, 2. In the absence of any response from Defendant contesting Plaintiff's assertion respecting the interrogatories, the Court finds that Defendant violated the Discovery Order by failing to provide responsive interrogatory answers.

### x.    Deposition

Finally, Plaintiff alleges that Defendant has refused to cooperate with the scheduling of an in-person deposition in violation of the Discovery Order. *See* Case No. 25-103, ECF 84.

Defendant argues that:

> [B]y forcing an in-person deposition […], [Plaintiff] can catch Defendant off guard and later twist her words. That is not the function of discovery. The Federal Rules provide for remote depositions under Rule 30(b)(4) and written or recorded conferral under Rule 37 precisely to prevent such gamesmanship.

Case No. 25-103, ECF 90, 2.

First, the Court notes that, pursuant to FRCP 30(b)(4), "the parties may *stipulate—or the court may on motion order—*that a deposition be taken by telephone or other remote means." Fed.R.Civ.P. 30(b)(4) (emphasis added). The parties have not stipulated to a remote deposition and the Court has not ordered a remote deposition. Defendant's argument is therefore without merit.

Next, the Discovery Order denied Defendant's Second Motion for Protection, in which she sought to delay and narrow the scope of her deposition; however, the Discovery Order did not address whether the deposition needed to be conducted in-person or remotely. [20] *See* Case No. 25-103, Discovery Order, ECF 67. Because the Discovery Order did not address whether the deposition would take place in person or remotely, the Court will not find Defendant in violation of the Discovery Order for seeking to have the deposition conducted remotely.[21]

In summary, Defendant has disobeyed the Discovery Order by refusing to provide all the documents that were the subject of the Request for Production and the Motion to Compel Production and by failing to provide responsive answers to Plaintiff's interrogatories that were the subject of the Request for Admissions and the Motion to Compel Responses.

The only issue remaining is the appropriate sanction.

### C. Default Judgment Sanction

As noted above, courts in the Third Circuit weigh six factors from *Poulis* in deciding whether default judgment constitutes an appropriate sanction for a party's violation of a court order. *See Poulis,* 747 F. 2d 863. An application of the six *Poulis* factors follows.

### i.      Extent of Defendant's personal responsibility

Defendant alleges that she faces obstacles that should excuse her violations of the Discovery Order, including her pro se status, her purported barriers to housing, technology, and transportation, and her alleged medical condition. Each of Defendant's arguments is discussed and rejected below.

---

[20] The Discovery Order also denied the First and Third Motions for Protection, which did not concern Defendant's request for a remote deposition.

[21] However, as discussed at length below, Defendant's obstructionist conduct and inconsistent statements in relation to the scheduling of the deposition support the imposition of a default judgment sanction.

Throughout her filings in response to the Sanctions Motions, Defendant attempts to excuse her failure to participate fully in discovery on the basis of her pro se status. *See, e.g.,* Case No. 25-103, ECF 81, 4 (Defendant argues that the Sanctions Motions are "intended to overwhelm a pro se litigant rather than fairly litigate the claims."); ECF 88, 1 ("[Defendant] has not refused to participate in discovery; instead, she has faced significant logistical and financial challenges as a self-represented litigant[.]"); ECF 92, 3 ("As a pro se litigant with limited resources, Defendant has nonetheless gone beyond her obligations[.]"). However, it is well-established that pro se litigants are responsible for their failure to comply with court orders. *See, e.g., Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) (cleaned up) ("A pro se plaintiff is responsible for [her] failure to […] comply with a court's orders."); *Sizemore v. McNeil*, 2016 U.S. Dist. LEXIS 7051, No. 2:15-cv-849, at *3-4 (W.D. Pa. Jan. 21, 2016) (citation omitted) (A pro se litigant "may not rely on his pro se status as an excuse for failure to follow applicable rules or Orders of [a] [c]ourt."). Defendant's pro se status therefore does not excuse her violations of the Discovery Order and, in fact, establishes that she alone bears the responsibility for her conduct in discovery, as opposed to if she were represented by counsel.

Defendant also attempts to excuse her failure to fully participate in discovery based upon her "housing instability." *See, e.g.,* Case No. 25-103, ECF 88, 2 ("Defendant has made the Court aware of her ongoing housing instability[] and financial hardship. These are not excuses but factual circumstances that have impacted her ability to obtain certain third-party documents[.]"). The record reveals that Defendant's use of the term "housing instability" is at best misplaced. By her own admission, Defendant currently resides at the Chesapeake City Residence on a farm, with rent and utilities paid by her client Mr. Sivapatham, where she is in possession of a "barn, designated pastures, and the apartment on the premises." Case No. 25-103, ECF 81, 4. Nothing

on the record supports that Defendant is experiencing housing instability which would interfere with her ability to comply with the Discovery Order.

In addition, Defendant repeatedly argues that she could not and cannot produce the requested documents in compliance with the Discovery Order because she "operates only from a cell phone." *See, e.g.,* Case No. 25-103, ECF 81, 2. However, Defendant has failed to offer any reasonable explanation as to how her operation from a cell phone would limit her ability to produce discovery.[22] Defendant's access to technology does not excuse her violations of the Discovery Order.

Next, in regard to Defendant's assertions that she cannot attend an in-person deposition due to transportation barriers, the Court finds Defendant's explanations unreasonable and uncredible. At the October Hearing, Defendant argued that she is unable to attend an in-person deposition because she "[does] not have a vehicle." Case No. 25-103, ECF 119, 2. She also averred that the proposed deposition location in Malvern, Pennsylvania is: "an hour and a half away from where I live [in Chesapeake City, Maryland…] and I can't drive that. So I mean I'd have to rent a car and drive that far[.]" Case No. 25-103, ECF 119, 4. In light of Defendant's assertions of transportation obstacles, the Court suggested to Plaintiff at the October Hearing that Plaintiff should move the location of the deposition to a location closer to Defendant. *See* Case No. 25-103, ECF 119, 4.  Plaintiff then pointed out to the Court that Defendant had only recently "moved from Montrose, Pennsylvania down to the Chesapeake and she indicated that she rented a truck or she used somebody else's truck for this purpose[.]" Case No. 25-103, ECF 119, 5. In response, Defendant insisted that she no longer had "access to that vehicle," because it belonged to an acquaintance in another town. Case No. 25-103, ECF 119, 5. The Court suggested that

---

[22] Notably, the docket reflects that Defendant's use of a cell phone has not prevented her from producing myriad and sophisticated filings in this Adversary Proceeding.

Defendant could travel to the deposition by means of public transportation or rideshare. *Id.* Defendant asserted in response that "there are no buses" where she lives. Case No. 25-103, ECF 119, 5.

Defendant's assertion that she has no vehicle at her disposal flatly contradicts other statements in her filings. In the Response to Plaintiff's First Motion for Sanctions, Defendant includes two purported "witness statements" in which two of her clients separately attest that they allow Defendant to use their vehicles. *See* Case No. 25-103, ECF 81, Ex. D and E. In one such "witness statement," an individual named Greg Ryan attests that "I also permit [Defendant] to use my personal truck and horse trailer for transportation of horses and personal belongings." *Id.* at Ex. D. In another such statement, Mr. Sivapatham—the *same individual* who allegedly currently pays Defendant's rent, utilities, and regular payments for care of his horses—states: "I permit [Defendant] to use my personal truck (2015 GMC Sierra 2500HD) and horse trailer (4Star 2+1 gooseneck trailer) for transportation of horses and for other related purposes." *Id.* at Ex. E.

The Court finds Defendant's contradictory statements in regard to alleged transportation barriers to evidence a general lack of credibility and willingness to mislead the Court. Defendant clearly has means of transportation at her disposal that would enable her to attend an in-person deposition—including but not limited to her apparently very generous network of clients—of which she simply refuses to avail herself, at least for the purpose of being deposed. Furthermore, the Court finds Defendant's statements at the October Hearing demonstrate a resistance to problem-solving that suggests a lack of good faith participation in discovery.

Finally, in regard to Defendant's assertions that ongoing medical issues prevent her from attending an in-person deposition, the Court finds Defendant's statements again lack credibility. At the October Hearing, Defendant averred that she has "a knee and back injury from a car

accident" which prevent her from driving, standing, or sitting for extended periods. Case No. 25-103, ECF 119, 2. By way of explanation of her alleged medical condition, Defendant stated at the October Hearing:

> I wanted to get a job at Starbucks and get a part-time job, but I can't because I just can't stand, I can't sit. I can't do those things for any length of time. I can't lift anything heavy.

Case No. 25-103, ECF 119, 27. Defendant also stated that: "driving that far [to Malvern, Pennsylvania from Chesapeake City, Maryland], by the time I'd get there, like, my back [would] seize[] up[.]" Case No. 25-103, ECF 119, 4. However, Defendant also conceded that she "recently" drove a truck from Montrose, Pennsylvania to the Chesapeake City Residence. The Court takes notice that the drive from Montrose, Pennsylvania to Chesapeake City, Maryland is an approximately three-hour drive, while the drive to the deposition from the Chesapeake City, Maryland to Malvern, Pennsylvania would take significantly less time, at approximately one hour. *See id.* At the October Hearing, Defendant attempted to explain this inconsistency in her alleged physical limitations by stating:

> I have just recently had procedures done on my back and had pain injections done in my back at ChristianaCare in Newark, Delaware. That relieved some of the pain that I had in my back and they have since worn off. And I have been trying to get in to get the next — you know, another set of injections done, but I haven't been able to get on the schedule there.

Case No. 25-103, ECF 119, 5.

Defendant's further testimony at the October Hearing renders her above statements uncredible. In describing to the Court the services she currently provides to Mr. Sivapatham, Defendant revealed that the nature of her current work is physically laborious:

> [Court]: [S]o what services are you providing for [Mr. Sivapatham]? How many horses does he have?

[Defendant]: He has 16 horses.[23]

[…]

[Court]: So I've never owned a horse. What do you do to take care of a horse?

[Defendant]: I mean feed, water, schedule vet, farrier, you know, basic wellness care. Some of them are pregnant, so I help with them foaling out and having babies.

Case No. 25-103, ECF 119, 28.

The Court finds it plainly uncredible that Defendant's alleged back and knee injuries would prevent her from driving or being driven to a deposition but would at the same time not prevent her from undertaking the above-described physically demanding work on a daily basis for 16 horses.

Given Defendant's lack of reasonable and credible explanation for her failure to fully participate in discovery, the Court finds that Defendant is personally responsible for her violations of the Discovery Order. This factor therefore weighs in favor of a default judgment sanction.

### ii.    Prejudice to Plaintiff caused by Defendant's failure to participate in discovery

Prejudice under the *Poulis* factors includes a "burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Briscoe v. Klaus*, 538 F.3d at 259 (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 220-23 (3d Cir.2003)); *see also Poulis,* 747 F.2d at 868 (finding that defendant was prejudiced by plaintiffs' failure to respond to discovery or to meet scheduling orders, which hindered defendant's ability to prepare its case). Prejudice also includes "excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe v. Klaus*, 538 F.3d at 259 (citing *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir.1994)).

---

[23] Earlier in the hearing, Defendant claimed Mr. Sivapatham had only three horses. *See* Case No. 25-103, ECF 119, 26 ("[Mr. Sivapatham] pays me $1200 for the daily care, and he has three horses.").

Defendant has denied Plaintiff access to discovery responsive to the Request for

Production and Motion to Compel Responses, including discovery of documents pertaining to

Defendant's vehicle acquisition, sale, transfer, ownership, and possession; Defendant's transfer

of assets greater than $50; Defendant's federal and state tax returns; Defendant's monthly bank

statements; Defendant's business records, contracts, agreements, and leases; Defendant's

business call logs; and Defendant's social media records. Defendant has also deprived Plaintiff of

responsive answers to interrogatories that were the subject of the Request for Admissions and the

Motion to Compel Responses. By withholding this discovery, Defendant has obstructed

Plaintiff's ability to prove that Defendant made false oaths in connection with the Bankruptcy

Case. There is additionally no doubt that Plaintiff has suffered costs expended in seeking to

obtain court orders to force Defendant's compliance with discovery.[24]

Based on the foregoing, the prejudice caused by Defendant's failure to comply with the

Discovery Order weighs in favor of a default judgment against Defendant.

### iii.    History of dilatoriness

"'Extensive or repeated delay or delinquency constitutes a history of dilatoriness[.]'"

*Briscoe v. Klaus*, 538 F.3d at 260 (quoting *Adams*, 29 F.3d at 874).

Defendant has consistently caused delay in the Adversary Proceeding. Her initial refusal

to provide adequate discovery responses to Plaintiff's Request for Admissions and Request for

Production led to this Court's issuance of the Discovery Order. Since the entry of the Discovery

Order, Defendant has provided only a fraction of the discovery she was ordered to produce.

Instead of complying with her discovery obligations, Defendant has devoted her time and

resources—which she insists are extremely limited—to filing duplicative responses and motions

---

[24] Plaintiff avers, for example, that it was "forced to expend additional time and legal fees seeking documents that Defendant admits she could obtain." Case No. 25-103, ECF 79, 4.

resisting discovery, including: the First Motion to Exclude Evidence; the Second Motion to

Exclude Evidence; the Response to First Motion for Sanctions; the Response to Supplemental

Memorandum; the Supplemental Memorandum in Opposition to Sanctions; the Supplemental

Reply; the Opposition to Second Motion for Sanctions; the Declaration Regarding Subpoena;

Defendant's Second Declaration; the Fourth Motion for Protection; and the Reply in Support of

Fourth Motion for Protection.[25] Furthermore, Defendant has refused to cooperate in scheduling a

deposition, asserting excuses that, as discussed above, lack credibility or merit.

The Court finds that Defendant's history of dilatoriness is beyond dispute. The third

*Poulis* factor therefore weighs in favor of a default judgment sanction.

### iv.    Whether the conduct of Defendant was willful or in bad faith

Under the fourth *Poulis* factor, the court must consider whether the conduct at issue was

"'the type of willful or contumacious behavior […] characterized as flagrant bad faith.'" *Briscoe

v. Klaus*, 538 F.3d at 262 (quoting *Adams*, 29 F.3d at 875). Conduct satisfying this factor includes

"callous disregard of responsibilities… not merely negligent behavior." *Johnson v. Walmart

Stores E., LP*, 772 F. Supp. 3d 551, 559 (D.N.J. 2025) (citation omitted). "Absence of reasonable

excuses may suggest that the conduct was willful or in bad faith." *Roman v. City of Reading*, 121

F. App'x 955, 960 (3d Cir. 2005) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d at 224); *see also In

re Chandler, No. CV 17-2164*, 2018 WL 4354349, at *5 (E.D. Pa. Sept. 12, 2018) ("[Debtor's]

history of avoiding depositions and trial based on alleged and unproven medical ailments

supports a finding of bad faith.").

None of the excuses offered by Defendant for failing to comply with the Discovery Order

come close to justifying her conduct. In fact, as previously discussed at length, the Court simply

---

[25] *See* Case No. 25-103, ECF 75; ECF 80; ECF 81; ECF 88; ECF 90; ECF 91; ECF 92; ECF 93; ECF 96; ECF 99;
ECF 104.

does not find any of her excuses credible. The abundance of filings she made attempting to evade

her discovery responsibilities suggests that her obstruction was incredibly willful, as she chose to

invest her time and resources into these filings instead of simply complying with the Discovery

Order at the outset.[26]

As such, this factor weighs in favor of entry of default judgment as a sanction.

### v.    Effectiveness of sanctions other than dismissal

"Dismissal or default judgment is an extreme sanction which should be a 'last, not first,

resort.'" *In re Feldman*, 608 B.R. at 440 (citing *Poulis*, 747 F.2d at 869). "Alternatives are

particularly appropriate when the plaintiff has not personally contributed to the

delinquency." *Poulis*, 747 F.2d at 866 (citation omitted).

Defendant has demonstrated to the Court that she is unwilling to consider reasonable

solutions to the barriers to discovery she alleges.[27] Furthermore, as discussed above, Defendant

---

[26] *See supra*, Section III(C)(i).

[27] By way of example, as discussed above, at the October Hearing, Defendant resisted the Court's proposed solutions to Defendant's alleged transportation barriers for various reasons lacking in consistency or credibility. *See supra*, Section III(C)(i); *see also* Case No. 25-103, ECF 119, 4-5. In addition, she simply could not provide coherent explanations respecting why she was having such difficulty producing certain third-party documents including bank statements and tax records as demonstrated by the exchange below from the October Hearing:

> [Court]: Bank statements are not things that are impossible to get ahold of. These are things that you can talk to your bank about. And you — and if you're on your phone, you know you should be able to do it because I know I can do it. […] So tell me […] exactly what you have done to get all of these documents. The IRS transcripts, the returns, the bank statements. What exactly have you done?
> [Defendant]: After [Plaintiff's Counsel] put in his motion — or whatever, his declaration, there was — you could do it on the IRS, which he didn't share it with me, so I didn't see it until he filed that. I did go on there and I tried to log in. And, like I said, they can't verify my identity to get some.
> [Court]: […] Why?
> Defendant: I don't — this has happened to me before. This has happened to me with tax returns before. So I have been trying to rectify or figure that out.
> [Court]: So what — just — I'm going to need a better explanation for why they can't verify you. Is there some issue in the past that —
> [Defendant]: I don't have a better explanation. Like — so my driver's license is expired, but I have the card, you know, that I got from DMV, so I filed that showing, you know, my identity. I don't have any documents for proof of address because I don't have any bills or anything that gets sent to my new address. So there was, you know, supporting documents that they needed for proof that I don't — I just don't have.

ECF 119, 21-23.

has repeatedly made misleading statements to the Court in order to evade discovery.[28] Given the

Defendant's pattern of evasive and obstructive conduct, the Court has no reason to believe that

she can be compelled to participate in discovery in this Adversary Proceeding, regardless of the

sanction imposed. On the contrary, the record suggests that she will continue to evade discovery,

without regard for her obligation to be candid with the Court. This factor therefore weighs in

favor of entering the sanction of default judgment against Defendant.

### vi.    Meritoriousness of claims

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if

established at trial, would support recovery by plaintiff or would constitute a complete defense."

*Poulis*, 747 F.2d at 869–70 (citations omitted). "Generally, in determining whether a plaintiff's

claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state

a claim." *Briscoe v. Klaus*, 538 F.3d at 263 (citing *Poulis,* 747 F.2d at 869–70).

The Complaint seeks denial of Defendant's discharge pursuant to § 727(a)(4)(A) of the

Bankruptcy Code, alleging that Defendant knowingly and fraudulently made false oaths or

accounts in connection with the Bankruptcy Case. Case No. 25-103, ECF 1. "A bankruptcy

discharge is a privilege that is dependent on a true presentation of the debtor's financial affairs."

*In re Tan*, 350 B.R. 488, 497 (Bankr. N.D. Cal. 2006), *aff'd*, No. ADV. 00-04199, 2007 WL

7541007 (B.A.P. 9th Cir. Sept. 28, 2007) (citing *In re Cox,* 904 F.2d 1399, 1401 (9th Cir.1990))

(cleaned up). Under § 727(a)(4)(A), "[t]he court shall grant the debtor a discharge, unless […]

the debtor knowingly and fraudulently, in or in connection with the case […] made a false oath

or account[.]" 11 U.S.C.A. § 727(a)(4)(A).

---

[28] *See, e.g., supra* Section III(C)(i).

The party objecting to discharge under § 727(a)(4)(A) bears the burden of establishing by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Young*, 576 B.R. 807, 814 (Bankr. E.D. Pa. 2017) (citing *In re Spitko*, 357 B.R. 272, 312 (Bankr. E.D. Pa. 2006)).

As discussed below, the record demonstrates that Plaintiff's claims would likely survive a motion to dismiss[29], and this factor therefore weighs in favor of a default judgment sanction.

### a. False statements under oath

False statements or omissions in the debtor's schedules, as well as false statements by the debtor during examinations, can constitute false oaths. *In re Young*, 576 B.R. at 814 (citing *In re Spitko*, 357 B.R. at 312).

In the context of denial of discharge pursuant to § 727(a)(4)(A), "[a]mendment of schedules will not protect an otherwise culpable debtor." *In re Gioele*, 452 B.R. 581, 589 (Bankr. M.D. La. 2011) (denying discharge pursuant to § 727(a)(4)(A) despite debtor amending inaccurate schedules, reasoning that "numerous false statements… weigh[ed] against a conclusion that the misstatements were honest."); *see also In re Traina,* 501 B.R. 379, 384 (Bankr. N.D. Cal. 2013) ("[The Court] must debunk the [Debtors'] contention that their amended bankruptcy schedules and Statement of Financial Affairs preclude the denial of their discharge. The [Debtors'] amendments do not prevent this court from determining whether they made a false oath in their original bankruptcy documents.").

---

[29] In fact, as noted above, the Court previously denied Defendant's Motion to Dismiss. *See* ECF 54.

Here, as discussed below, the first two elements of § 727(a)(4)(A)— (1) the debtor made

a statement under oath in her bankruptcy schedules, and (2) the statement was false—are easily

satisfied.

**(1) Omission and mischaracterization of lease**

The Complaint alleges that, in Defendant's Petition and Schedules, she made false

representations as to the existence of and nature of her lease of the Cochranville Property (the

"Cochranville Property Lease"). Case No. 25-103, ECF 1, ¶¶ 17, 31.

The Complaint alleges that, in the Petition at Question 11, Defendant falsely denied

renting the Cochranville Property. *Id.* at ¶ 17. In the Answer, Defendant admits to the inaccuracy

and states her intent to amend the Petition. Case No. 25-103, ECF 6, ¶ 17. Additionally,

Defendant asserts generally that she "promptly amended the [filings] to correct any omissions or

inaccuracies, including those cited in Plaintiff's [C]omplaint," and that such allegations in the

Complaint "are now moot or without merit, as the alleged conduct has been remedied." Case No.

25-103, ECF 36, ¶ 11.

Next, the Complaint alleges that, in Schedule G, Defendant misrepresented the nature of

the Cochranville Property Lease as being a "Residential Lease Agreement," whereas Plaintiff

alleges that the Lease encompassed both Defendant's residence and "an entire horse farm

facility, including a show ring, stables, and fields." Case No. 25-103, ECF 1, ¶ 31. Plaintiff

alleges that, in actuality, Defendant used the Cochranville Property to run three businesses: (1)

GTS Show Jumping, through which Defendant, per her Amended SOFA, engages in equestrian

boarding and training; (2) Potten End, LLC, through which Plaintiff alleges Defendant buys,

trains, and sells horses[30]; and (3) Turning Point Designs, which Plaintiff alleges is an unincorporated sole proprietorship through which Defendant sells home décor, gift items, apparel, jewelry, and accessories.[31] Case No. 25-103, ECF 1, ¶¶ 17(b), 19-21, 24, 26; *see also* Case No. 24-14367, ECF 26.

By her own admission, Defendant made a false oath in regard to Question 11 of the Petition, in which she falsely denied renting her residence. As noted above, Defendant's averment that she amended her filings to correct her error is not a valid defense. *See, e.g., In re Gioele*, 452 B.R. at 589. For the purposes of deciding this Motion, and since Debtor has already admitted in her Answer that her response to Question 11 was inaccurate, the Court need not make a finding regarding the fact-intensive inquiry as to whether Defendant made a false oath in regard to the residential nature of the Cochranville Property Lease. *See In re Guardian Elder Care at Johnstown, LLC*, 665 B.R. 270, 277 (Bankr. W.D. Pa. 2024) (discussing the analysis applied in determining whether a lease involves nonresidential real property under § 365 of the Bankruptcy Code as being "based on the totality of the circumstances, with a focus on the specific facts and practical realities of each case.").

### (2) Undisclosed ownership of businesses

The Complaint alleges that, in her bankruptcy filings, Defendant omitted information respecting her ownership of and income generated from Potten End LLC, Turning Point Designs, and GTS Show Jumping. Case No. 25-103, ECF 1, ¶¶ 17(b), 19, 22-27, & 34.

First, the Complaint alleges that, in the Petition at Question 12, Defendant falsely denied being a sole proprietor of any full- or part-time business, despite Defendant being the sole

---

[30] Defendant's Amended SOFA lists Potten End, LLC, as Defendant's business but omits a description of the nature of the business. *See* Case No. 24-14367, ECF 26.
[31] Defendant's Amended SOFA describes the nature of the business of Turning Point Designs as "[o]ccasional requests for crocheting and sewing." *See* Case No. 24-14367, ECF 26.

proprietor of GTS Show Jumping.[32] Case No. 25-103, ECF 1, ¶ 17. In the Answer, Defendant admits this allegation. Case No. 25-103, ECF 6, ¶ 17.

Second, the Complaint alleges that, in Schedule A/B at line 19, in regard to "[n]on-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture," Defendant omitted any mention of her ownership of Potten End LLC, despite Potten End LLC having been organized and registered by Defendant on June 8, 2024. Case No. 25-103, ECF 1, ¶ 19. In the Answer, Defendant concedes that Potten End LLC was "a registered entity," but Defendant attempts to justify omitting her interest in Potten End LLC based upon her allegation that it "never operated or had any revenue or bank accounts." Case No. 25-103, ECF 6, ¶ 19.

Third, the Complaint alleges that, in Defendant's SOFA, Schedule A/B, and Schedule I, Defendant failed to disclose her ownership interest in, and income generated from, Potten End LLC and Turning Point Designs. Case No. 25-103, ECF 1, ¶¶ 23-25, 34. In the Answer, Defendant denies the allegation that she failed to report her interest in and income generated from Potten End LLC, on grounds that "Potten End LLC was an idea that never went further than a registration with Pennsylvania." Case No. 25-103, ECF 6, ¶ 23. Defendant also denies that she failed to report her ownership interest in and income generated from Turning Point Designs, on grounds that:

> Turning Point Designs is nothing more than a hobby where I buy yarn or ties at Goodwill Stores and make an occasional pommel pad or hat. I did not think of this occasional sewing as a business since it was rarely ever for money. The last item I sold was June 18, 2024 for $100, without deduction for costs of supplies and shipping. I think in 2024 I sold approximately $300 worth of items, without deduction for costs of supplies and shipping.

*Id.* at ¶ 24. She states in the next paragraph:

---

[32] The Complaint does not specifically allege that Defendant falsely denied at Question 12 being the sole proprietor of Turning Point Designs or Potten End, LLC. Case No. 25-103, ECF 1, ¶ 17.

> It is admitted that I did not disclose the very minimal sewing income on the statement of financial affairs. It is denied that I should put it in Schedule I. This is not recurring income and is negligible.

*Id.* at ¶ 25. Despite these arguments, Defendant amended her SOFA to include Potten End LLC and Turning Point Designs as businesses in which she is a sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time. Case No. 24-14367, ECF 26, 7.

By her own admission, Defendant made a false oath in her Petition by failing to report her ownership interest in GTS Show Jumping. Furthermore, and also by her own admission, Defendant falsely omitted her ownership interests in and income generated from Potten End LLC and Turning Point Designs. Defendant's unilateral determination that Potten End LLC and Turning Point Designs constituted failed ventures on one hand and income-generating hobbies on the other did not relieve her of her duty to disclose them in her bankruptcy filings. *See, e.g., In re Oakley*, 503 B.R. 407, 424 (Bankr. E.D. Pa. 2013), *aff'd,* 530 B.R. 251 (E.D. Pa. 2015) ("[T]he bankruptcy process depends upon the complete and candid disclosure of assets, income, expenses[,] and liabilities of the debtor."). Furthermore, as noted above, the fact that Defendant amended her filings is not a valid defense. *See, e.g., In re Gioele*, 452 B.R. at 589.

### (3) Inaccurate gross income

The Complaint alleges that, in the SOFA, Defendant falsely stated her gross income for 2022 as $0, for 2023 as $0, and for 2024 as negative $14,393.99. Case No. 25-103, ECF 1, ¶ 33.

In the Answer, Defendant admits the allegation that she misreported her income, stating: "Admitted. I am losing money monthly and so I reported a net income number. Amendment will be made to disclose gross income[.]" Case No. 25-103, ECF 6, ¶ 33.[33]

---

[33] Of note, Defendant's Amended SOFA sets forth wildly different gross income amounts than she originally reported— in the Amended SOFA, she states her gross income for 2022 as $142,503.40, for 2023 as $131,045.20, and for 2024 as $128,163.55. *See* Case No. 24-14367, ECF 26.

Defendant admits to falsely reporting her gross income in the SOFA. As stated above, the fact that Defendant amended her filings is not a valid defense. *See, e.g., In re Gioele*, 452 B.R. at 589.

### (4) Undisclosed litigation and creditors

The Complaint alleges that Defendant falsely omitted from her bankruptcy filings her involvement in certain litigation and that she also failed to disclose creditors resulting from such undisclosed litigation. Case No. 25-103, ECF 1, ¶¶ 37-42.

First, the Complaint alleges that Defendant failed to disclose in the SOFA that, at the time of filing the Petition, she was a defendant in a lawsuit in the matter of *Shannon Eckel trading as Hat Trick Sport Horses v. Gillian Tracy Stupples*, Court of Common Pleas of Aiken County, South Carolina, Docket No. 2024CP201851 (the "Shannon Eckel Matter"), in which Defendant was accused of misappropriating and converting $35,000 in proceeds from the sale of a horse she had been entrusted to sell for the plaintiff in that case. *Id.* at ¶ 37. The Complaint alleges that Defendant did not list the plaintiff in the Shannon Eckel Matter, Shannon Eckel, as a creditor in Schedule E/F. *Id.* at ¶ 38.

In the Answer, Defendant responds:

> I was not served. I knew nothing of this lawsuit. According to the affidavit of service, a person by the name of Greg Stupples was served. Greg Stupples does not exist. I did not know I was a defendant in any lawsuit.

Case No. 25-103, ECF 6, ¶ 37.[34] Defendant filed an Amended SOFA that lists the Shannon Eckel Matter. *See* Case No. 24-14367, ECF 26, 3. She also filed an Amendment to the Creditor Matrix

---

[34] Plaintiff responds that, to the contrary, Defendant was properly served in the Shannon Eckel Matter "on August 7, 2024, by handing the document to an individual who provided the name 'Greg Stupples' telling the process server that Gillian Stupples was not available as she was 'working a horse out.'" Case No. 25-103, ECF 37, ¶ 17. Plaintiff believes and avers that "Greg Stupples" is actually "Greg Ryan," a client of Defendant. *Id.* at n.5.

and an Amended Schedule E/F listing Shannon Eckel as a creditor. *See* Case No. 24-14367, ECF 17-18.

Second, the Complaint avers that Defendant failed to disclose in her SOFA that she was a defendant in the Kimberly Portanova-Feibus Matter, for which judgment was entered against her on April 18, 2024. Case No. 25-103, ECF 1, ¶ 40. In addition, the Complaint alleges that Defendant failed to list the plaintiff, Kimberly Portanova-Feibus*,* as a creditor in Schedule E/F. *Id*. at ¶ 40.

In the Answer, Defendant avers that she "forgot about this case." Case No. 25-103, ECF 6, ¶ 40. Defendant filed an Amended SOFA that lists the Kimberly Portanova-Feibus Matter. *See* Case No. 24-14367, ECF 26. She also filed an Amendment to the Creditor Matrix and an Amended Schedule E/F listing Kimberly Portanova-Feibus as a creditor. *See* Case No. 24-14367, ECF 17-18.

Third, the Complaint alleges that Defendant failed to disclose in her SOFA that she was a defendant in the matter of *Peter Hicks vs. Gillian Stupples*, No. MJ-15304-CV-46-2023, in the Magisterial District Court of Kennett Square, Pennsylvania, (the "Peter Hicks Matter"). Case No. 25-103, ECF 1, ¶ 41. In addition, the Complaint alleges Defendant failed to list the plaintiff, Peter Hicks, as a creditor in Schedule E/F. *Id.*

In the Answer, Defendant asserts: "I have had contact with Peter Hicks and planned on paying Peter [H]icks in the future. I misunderstood. The schedules will be amended to reflect the creditor and the debt." Case No. 25-103, ECF 6, ¶ 41. Defendant filed an Amended SOFA that lists the Peter Hicks Matter. *See* Case No. 24-14367, ECF 26, 3. She also filed an Amendment to the Creditor Matrix and an Amended Schedule E/F listing Peter Hicks as a creditor. *See* Case No. 24-14367, ECF 17-18.

Finally, the Complaint alleges that Defendant failed to disclose in the SOFA that she was subject to the Levy for the Wellspointe State Court Judgment. Case No. 25-103, ECF 1, ¶ 35.

In the Answer, Defendant denies this allegation, averring that, "the sheriff did not levy [her] property." Case No. 25-103, ECF 6, ¶ 35. However, in later filings and at the October Hearing, Defendant admitted to the existence of and her knowledge of the Levy. *See* Case No. 25-103, ECF 119, 19 ("I mean the sheriff came to my house with a levy."). Furthermore, Defendant averred at the October Hearing that she "provided to [her attorney] the copy of that levy when [she] filed [her] petition[.]" *Id.* at 19.[35]

Defendant admits to falsely omitting the Shannon Eckel Matter, the Kimberly Portanova-Feibus Matter, and the Peter Hicks Matter, the related creditors, and the Levy from her bankruptcy filings. As noted above, the fact that Defendant amended her filings is not a valid defense to her false omissions. *See, e.g., In re Gioele*, 452 B.R. at 589. Her explanations that she "knew nothing" of the Shannon Eckel Matter, "forgot about" the Kimberly Portanova-Feibus Matter, and "misunderstood" the Peter Hicks Matter do not negate the fact that these matters and related creditors were falsely omitted. Neither do her arguments that the Levy was not against her property or that her attorney failed to include the Levy in her filings negate the fact that Defendant failed to disclose the Levy in her bankruptcy filings. Such defenses go instead to the element of knowledge of the falsity of her oaths, discussed below.

---

[35] Defendant nevertheless argued at the October Hearing that the Levy was not carried out against her property, because the Levy indicated that it was for "window [treatments]," which Defendant avers she "didn't own because they belong[ed] to the leased house." Case No. 25-103, ECF 119, 19. Plaintiff's counsel sought to clarify for the Court the meaning of the language of the Levy:

> [Plaintiff]: It's common practice in the Court of Common Pleas of Chester County that that's called a site levy. And that's something I'm sure [Defendant's attorney] is aware of, so you don't have to break into the house. You — the sheriff basically notes — notes that the windows were closed and, you know, we're levying everything.

*Id.*

By way of summary, the record is clear that Defendant, in her bankruptcy filings: falsely denied renting her residence at the Cochranville Property; falsely denied being the sole proprietor of any business; falsely omitted her ownership interest in and income generated from Potten End LLC and Turning Point Designs; falsely reported her gross income for years 2022, 2023, and 2024; falsely omitted that she was a party to litigation in the Shannon Eckel Matter, the Kimberly Portanova-Feibus Matter, and the Peter Hicks Matter; falsely omitted Shannon Eckel, Kimberly Portanova-Feibus, and Peter Hicks as creditors; and falsely omitted the Levy in relation to the Wellspointe State Court Judgment.

Upon consideration of the record, there is clearly merit to Plaintiff's allegations that Defendant made false statements under oath in connection with the Bankruptcy Case. *See* 727(a)(4)(A).

**b. Knowledge**

"'A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.'" *In re Spitko*, 357 B.R. at 313 (citing *In re Maletta,* 159 B.R. 108, 112 (Bankr.D.Conn.1993). "[I]t is the Debtor's duty to file accurate schedules and value his assets correctly." *Fraser v. CitiMortgage, Inc*., 599 B.R. 830, 837 (Bankr.W.D.Pa. 2019). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath. Debtors have a duty to carefully review the information included in their schedules and statements and insure that the information is accurate and complete." *In re Rosenberg*, 642 B.R. 711, 726 (Bankr. W.D. Pa. 2022) (citing *Office of the U.S. Tr. v. Zimmerman*, 320 B.R. 800, 806 (Bankr.M.D.Pa. 2005) (cleaned up).

Reliance on counsel does not abrogate a debtor's duty to file accurate and complete schedules and statements. *See* 6 Collier on Bankruptcy ¶ 727.04 (16th 2025) (citing *Jordan v. Bren*, 303 B.R. 610, 616 (B.A.P. 8th Cir. 2004)) (Debtors' statement that they had not read schedules or statement of affairs but merely had relied on counsel evidenced reckless disregard for truth.).

Defendant argues, in general, that "any inaccuracies [in her filings] were the result of reliance on counsel" in the Bankruptcy Case. Case No. 25-103, ECF 36, ¶ 10. As noted above, Defendant had a duty to ensure that her filings were complete and accurate before signing them, and her failure to do so in reliance on her attorney is not a valid defense. *See, e.g., Jordan v. Bren*, 303 B.R. at 616. Defendant cannot "play ostrich" and pretend that she is not responsible for the omissions and misrepresentations in her filings. *See In re Rosenberg*, 642 B.R. at 726. At minimum, Defendant's signing off on her bankruptcy filings without ensuring their accuracy and completeness constitutes reckless disregard for the truth. *See Jordan v. Bren*, 303 B.R. at 616.

As noted above, Defendant also specifically contests her knowledge of the falsity of certain omissions and statements. Defendant avers that she "forgot about" the Kimberly Portanova-Feibus Matter and "misunderstood" the Peter Hicks Matter. Case No. 25-103, ECF 6, ¶¶ 40-41. Even if the Court were to give credence to Defendant's assertions, forgetfulness and misunderstanding are not valid defenses to a charge of false oaths pursuant to § 727(a)(4)(A), given a debtor's duty to ensure the accuracy and completeness of bankruptcy filings. *See, e.g., In re Rosenberg*, 642 B.R. at 726.

There is therefore merit to the Complaint's allegations that Defendant had knowledge of the falsity of her oaths. [36]

---

[36] Defendant also avers that she "knew nothing" of the Shannon Eckel Matter, arguing that she was not served. Case No. 25-103, ECF 6, ¶ 37. Although the current record does not provide the Court to find with certainty that

### c. **Fraudulent intent**

To determine if a debtor made a false oath or omission with fraudulent intent, a court considers the debtor's whole pattern of conduct. *In re Anderson*, 350 B.R. 803, 808 (Bankr. S.D. Ill. 2006). A "series or pattern of errors can give rise to an inference of intent to deceive" supporting denial of discharge. *In re Mick*, 310 B.R. 255, 261 (D. Vt. 2004) (citing *Beaubouef v. Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992)). Fraudulent intent may be established from the "cumulative effect of [debtor's] falsehoods." *In re Hammeken*, 316 B.R. 723, 94 A.F.T.R.2d 2004-6369 (Bankr. D. Ariz. 2004).

Here, the myriad inaccuracies in Defendant's bankruptcy filings, discussed above, give rise to an inference of fraudulent intent.[37] Furthermore, Defendant's inconsistent and misleading statements to the Court, discussed above in the context of her violations of the Discovery Order and refusal to schedule an in-person deposition, evidence a pattern of deceptive conduct that supports an inference of fraudulent intent in completing her Schedules and SOFA.[38]

Therefore, there is merit to the Complaint's allegations that Defendant possessed the requisite fraudulent intent in making false oaths in connection with the Bankruptcy Case.

### d. **Materiality**

A statement or omission relates materially to a bankruptcy case when the subject "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or existence and disposition of property." *In re Young*, 576 B.R. at 814 (citing *In re Singh,* 433 B.R. at 154).

---

Defendant had knowledge of the falsity of the omission of the Shannon Eckel Matter, as discussed above, the record demonstrates Defendant likely had knowledge of the falsity of other omissions such that Plaintiff's claims would likely succeed at trial.

[37] *See supra*, Section III(C)(vi)(a).

[38] *See supra*, Section III(C)(i).

As discussed above, Plaintiff's allegations coupled with Defendant's admissions would show that Defendant, in her bankruptcy filings, falsely denied renting her residence at the Cochranville Property; falsely omitted that she was a party to litigation in the Shannon Eckel Matter, the Kimberly Portanova-Feibus Matter, and the Peter Hicks Matter; falsely omitted Shannon Eckel, Kimberly Portanova-Feibus, and Peter Hicks as creditors; and falsely omitted the Levy in relation to the Wellspointe State Court Judgment. Each of these alleged false statements bears a relationship to Defendant's financial affairs and to the estate.

Furthermore, Plaintiff has shown that Defendant falsely denied being the sole proprietor of any business; falsely omitted her ownership interest in and income generated from Potten End LLC and Turning Point Designs; and falsely reported her gross income for 2022, 2023, and 2024. Each of these alleged false statements bears a relationship to Defendant's business dealings and transactions.

Given the above, there is merit to the Complaint's allegations that Defendant's false oaths are material to the Bankruptcy Case. Therefore, because the allegations in the Complaint accepted as true would survive a motion to dismiss, Plaintiff's claims are sufficiently meritorious to support imposition of the sanction of default judgment for Defendant's noncompliance with the Discovery Order.

In summary, the Court finds that Defendant has violated the Discovery Order by way of her failure to produce documents in response to the Request for Production and the Motion to Compel Production and her failure to provide responsive answers to Plaintiff's interrogatories that were the subject of the Request for Admissions and the Motion to Compel Responses. Consideration of each of the six *Poulis* factors supports the Court's conclusions that Defendant is personally responsible for her violations of the Discovery Order; that she has prejudiced

Plaintiff's ability to litigate the Adversary Proceeding through her failure to participate in discovery; that she has demonstrated an indisputable history of dilatoriness; that her discovery misconduct was in bad faith; that sanctions other than a default judgment would be futile; and that Plaintiff's claims would survive a motion to dismiss. Therefore, the sanction of default judgment in favor of Plaintiff is warranted.

## IV.    CONCLUSION

For the reasons stated above, the Sanctions Motions will be granted, and judgment will be entered in favor of Plaintiff and against Defendant. Defendant will be denied a bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(4)(A).[39]

Date:  December 22, 2025

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[39] Plaintiff's Motion to Amend Complaint and Defendant's First Motion to Exclude Evidence, Second Motion to Exclude Evidence, and Fourth Motion for Protection are accordingly moot. See Case No. 25-103 ECF 73; ECF 75; ECF 80; ECF 99.